| 82 | 507 |
| 99 | 574 |

## Staunton.

### POINDEXTER V. BURWELL AND ALS.

#### OCTOBER 8th, 1886.

1. CHANCERY PRACTICE— *Want of jurisdiction.*—Though the question of jurisdiction be not raised by demurrer or otherwise, yet if at hearing the pleadings do not make a case proper for relief, the court will dismiss the bill.

2. IDEM—*Relief in part.*—If bill states case in alternative according to what construction is given in agreement set up therein, and case made according to the adopted construction, with prayer for general relief, entitles plaintiff to some relief, though not to all asked for, the bill will be retained and such relief be given as plaintiff appears to be entitled to.

3. EQUITABLE JURISDICTION AND RELIEF—*Lex loci rei sitae.*—A court of one State cannot decree so as directly to affect land in another State—*e. g.*, to sell the land. But it can act *upon the person*, if he be within its jurisdiction, and compel him to convey the land, or otherwise comply with its decree.

4. TRUST DEED—*Construction—Agreement—Case at bar.*—As trustee, C. P. had no power to make the agreement, nor to bind the interests of his *cestuis que trust* in the Texas land conveyed to him in trust; but that agreement binds C. P. personally to the extent of his interest in said land, and is a charge on the same, and he must pay plaintiff's judgment against A. P., or he will be compelled by the court to convey his said interest to plaintiff.

Argued at Richmond.    Decided at Staunton.

Appeal from decree of the chancery court of the city of Richmond, pronounced May 14, 1884, in the cause of W. P. Burwell against Charles Poindexter and others. The original bill was filed in July, 1880, against Charles Poindexter

as trustee, and in his own right, as the only defendant. An amended bill filed in August, 1882, made additional defendants of George, Alfred, William M., John E., and Thomas Poindexter, the devisees under the will of their father, James H. Poindexter, deceased. The will of said James H. Poindexter was admitted to probate in June, 1867, in the county court of Henrico county. By it the testator devised to his said six sons considerable real estate in and near Richmond, Va., and 620 acres in Navarro, and 1,920 acres in Johnson county, Texas. By deed dated June 3, 1873, duly recorded, Alfred Poindexter and wife conveyed all his interest under said will to J. A. Richardson, as trustee, to secure a negotiable note for $1,750.

By deed dated March 7, 1874, the said devisees conveyed all their several interests under said will to Charles Poindexter. This deed recites that the real estate devised to them under said will remained undivided; that they desired that it should be divided, so that each devisee might hold his share in severalty, and that deeds of trust had been given by some of the devisees incumbering their individual interests in the estate; and that it conveys all of said devisees' interests in said real estate to said Charles, in trust that he shall, in the manner deemed best by him, sell all or any of the property so conveyed to him, or raise money thereon by mortgage or otherwise, with full power to convey the property, and that out of the proceeds of such sales, "after first paying off the liens or incumbrances of all kinds upon the property hereby intended to be conveyed," he shall provide an annuity of $500 for their mother, Mrs. Sarah A. Poindexter, and divide the residue among the parties according to their several interests under the said will, &c.

Default having been made as to the payment of said negotiable note, the trustee, Richardson, in pursuance of the deed of trust executed to him by Alfred Poindexter and wife, sold

the entire interest of said Alfred under said will, and by deed dated October 15, 1874, conveyed the same to Charles Poindexter, as trustee, for the said devisees under the will of James H. Poindexter, deceased, including Charles himself, but excluding Alfred.

On the 14th day of December, 1874, a judgment was obtained by said William P. Burwell against Alfred Poindexter in the circuit court of the city of Richmond for $378.40, with interest thereon at six per cent. per annum from January 1, 1871, till paid, and $14.07 costs; and to enforce the same on the real estate of the judgment debtor in said city and vicinity, he filed his bill in chancery in the court below against said Charles Poindexter as trustee as aforesaid.

However, on the 13th of July, 1877, an agreement under seal was made between said Burwell and said Charles Poindexter, "acting as trustee under the deed of trust of March 7, 1874, for the devisees of James H. Poindexter, deceased," whereby said Burwell assigned said judgment to said Charles Poindexter for the benefit of himself and of the other devisees, except Alfred, and agreed to dismiss said chancery suit, "in consideration that said Charles Poindexter, as trustee as aforesaid, doth covenant and agree with the said Wm. P. Burwell that out of the proceeds of the sale of the lands in Johnson and Navarro counties, Texas, of which James H. Poindexter died seized and possessed, he will, as he receives it, pay one-sixth part to the said Burwell, after payment of whatever costs and expenses may be necessary to make the said lands salable, including the taxes, which the said Charles Poindexter, trustee, will proceed to pay as soon as possible; and that said payment of one-sixth part, to be made as aforesaid, shall be continued out of the proceeds of said lands until the amount of the judgment of the said Burwell against said Alfred Poindexter, as above described, including interest and costs, shall be fully paid."

Now, the bill and amended bill aforesaid were filed by Burwell for the enforcement of this agreement. The averments are that Charles Poindexter had the power under the trust deed of March 14, 1874, to bind by said agreement, not only his own interest, but the interests of all the other devisees in said Texas lands, and that he did bind the same; that nevertheless he had paid complainant nothing on said debt; that the Texas lands might have been sold at fair prices long ago and the debt paid, but that the trustee declined to sell when he had opportunity for doing so; that though no time is specified for the sale, yet such sale should have been made in a reasonable time which has elapsed already; that the trustee had no right to refuse a fair price for the land and hold it indefinitely unless he paid the complainant's claim; and that by his conduct aforesaid, said Charles Poindexter had made himself liable to complainant for his said debt. The prayer is that said Charles be required to pay the amount secured by the agreement aforesaid, with interest and costs, or, if not personally responsible therefor, that he be either required to sell the said Texas lands at once, or to convey to complainant enough of same to satisfy his debt, and for general relief.

Three of the defendants, to wit: James Poindexter and wife, and William M. Poindexter, were proceeded against as non-residents of this State by order of publication. Three of them, to wit: the appellants here, John E. and Thomas Poindexter, and the trustee, Charles Poindexter, filed their demurrers and answers to the bill and amended bill. George H. Poindexter did not appear. The answer of Charles admits the assignment of the judgment, the dismission of the chancery suit, and the execution of the agreement; contends that that agreement only accomplished the putting of Burwell in the place of Alfred Poindexter as to the proceeds of the Texas lands, whatever that place was, and denies that it made either himself or his interest in the Texas lands liable for said judgment.

The joint answer of Thomas and John E. Poindexter denies that Alfred owned any interest in the lands devised by their father, at the date of said judgment or since, his interest therein having passed to Charles, as trustee, under the sale thereof made by Trustee Richardson, as aforesaid; denies that Charles, as such trustee, or otherwise, had the power to bind either of these respondents or any of the said devisees, except himself, by the agreement to pay Burwell the amount of said judgment, either out of the Texas lands or otherwise; and denies also that the chancery court had jurisdiction of this case, because the lands proposed to be sold are situated in the State of Texas, and one of the owners thereof is a non-resident of Virginia.

The cause coming on for hearing May 14, 1884, the said chancery court, by its decree then entered, held that the complainant's claim was a proper charge under the agreement of July 13, 1877, between him and Charles Poindexter, as trustee, upon one-sixth of the proceeds of the sale of the lands in the counties of Johnson and Navarro, in the State of Texas, of which James H. Poindexter died seized and possessed; but without deciding at that time whether the one-sixth interest so charged is to be considered as the share of Alfred Poindexter in the lands conveyed to Charles Poindexter, trustee, or the interest of said Charles therein. And being further of opinion that the plaintiff had then a right to demand a sale of said lands, or of so much thereof as will pay his claim, interest and costs, and that said Charles Poindexter, trustee, in whom the legal title is vested, having been served with process in this case, the court had jurisdiction over the matter in litigation, and could force him to convey title to the purchaser of said lands. The court further decreed that unless Charles Poindexter, or some one for him, paid to the plaintiff the sum of $392.47, with interest on $378.40, part thereof, from January 1, 1871, till paid, and the costs of this suit, then W. W. Henry

and John A. Coke, special commissioners, shall sell at public auction, at such place in the State of Texas, or in the city of Richmond, Va., as they may deem best, the said 1,920 acres of land in Johnson county, Texas; and if the net proceeds of the sale be not sufficient to pay the plaintiff's claim, interest and costs, then they shall sell in a similar manner the said 620 acres in Navarro county, Texas.

From this decree Thomas and John E. Poindexter obtained from one of the judges of this court an appeal and writ of *supersedeas.*

*Coke & Pickerell,* for the appellants.

*W. W. Henry,* for the appellee.

RICHARDSON, J. (after stating the case), delivered the opinion of the court.

The appellants assign several errors, of which the *first* is, that the chancery court overruled the demurrer to the bill and amended bill. As a ground of demurrer, they say that the chancery court of the city of Richmond, Virginia, did not have jurisdiction to hear and determine the case presented by the bill, because the land in controversy is situated in the State of Texas.

The question of jurisdiction may always be raised by demurrer, and though no objection has been so taken, the court will dismiss the bill at the hearing if it does not state a case proper for relief. *Green & Suttle* v. *Massie,* 21 Gratt. 356; *Salamone* v. *Keiley,* 80 Va. 86. And however raised, it is always the first question to be decided by this court in the consideration of a case brought before it for review. The well settled general rule is, that the court of one State has no jurisdiction to

make a decree which will directly affect either the legal or equitable title to land situated in another State. The doctrine is, that if the person to do the act decreed is within the jurisdiction of the court, and the act may be done without the exercise of any authority *operating territorially* within the foreign jurisdiction, the court may act *in personam*, and oblige the party to convey, or otherwise to comply with its decree. But it is not competent to the court to decree touching a foreign subject, when the act to be done can be accomplished and perfected only by an authority *operating territorially.* Thus a conveyance may be decreed of lands abroad, if the defendant is within the jurisdiction of the court, but not a partition of lands, as between joint tenants, tenants in common or co-parceners. *Penn* v. *Lord Baltimore*, 1 Ves. Sen. 444, and notes thereon; 2 L. C. in Eq. pp. 1806 to 1832 inclusive; *Massie* v. *Watts*, 6 Cranch, 148; *Farley* v. *Shippen*, Wythe's R. 135; *Guerrant* v. *Fowler and Harris*, 1 H. & M. 5; *Dickinson* v. *Hoomes*, 8 Gratt. 353; 4 Minor's Insts. 1201.

And if the courts of this State cannot make partition of lands lying in another State, although the parties live here, as was said by Chancellor Taylor in *Guerrant* v. *Fowler & Harris*, and as is fully sustained by the other authorities cited, *supra*, "because the process of the courts of this State could not be effectual beyond its limits," and because the act to be done (the division of the land), could be accomplished only by an authority *operating territorially*, then it follows, *a fortiori*, that the courts of this State cannot decree *a sale* of lands lying in another State. *Barger* v. *Buckland*, 28 Gratt. 850, may be taken, at first glance, as an exception to the rule that *lex loci rei sitae* governs as to the sale as well as to the partition of land. But really that case constitutes such an exception as at once illustrates and proves the rule. That was the case of a deed of trust executed to secure a debt, on a tract of land situated

in two counties, both then in Virginia, but one of which after-wards became part of West Virginia, the other remaining in Virginia. Upon default of payment, there being no trustee to execute the contract of the parties to sell the land and pay the debt, under the circumstances the court, in order to perform the contract of the parties and to fulfill its own maxim, that "a trust shall not fail for want of a trustee," decreed that unless the grantor should pay the debt within a prescribed period, then certain named persons should execute the trust by selling the land and applying the proceeds in payment of the debt. Such was the agreement of the parties, and to it was applicable that most elementary principle of law relative to contracts, viz: *modus et conventio vincunt legem.*

Mr. Rorer, in his work on Judicial Sales, sec. 39, says: "Lands lying in one State cannot be reached or sold under an order, license, or decree of a court of another and different State. The jurisdiction is local. The *lex loci rei sitae* governs." For this proposition that author cites many high authorities; to which may be added the decision of the Supreme Court of Kentucky in the case of *Snead* v. *Ewing*, 5 J. J. Marshall, 460; and the decision of the Supreme Court of New York in *Hanly* v. *James*, 7 Paige Chy. 213; and of the Supreme Court of the United States, in *McGoon* v. *Scales*, 9 Wall 23.

Yet it is the settled law that a person may be decreed to convey lands lying in another State, because the decree operates only upon the person who is to make the conveyance and who is within the jurisdiction of the court. Hence, in a suit for specific performance against a defendant within the jurisdiction and duly served with process, it is no defence that the lands to be affected by the decree are in another State or country. See White and Tudor's notes to *Penn* v. *Lord Baltimore*, 2 Lead. Cas. in Eq., 1823, *et seq.*, and authorities there cited.

It is useless to spend more time in defining the law of this

case, which is well settled. The difficulty here is in determining the true meaning and effect of the agreement of July 13, 1877, and the extent to which its enforcement would be incompatible with the rule regulating the jurisdiction of the local court over persons within and lands without the State. In order to arrive at its proper construction on the pivotal point touching the jurisdiction of the court below, it is necessary to analyze it.

It is plain that at its date, and at the date of the judgment, Alfred Poindexter owned no interest in said Texas lands, directly or indirectly, in law or in equity, so far as the record shows. It seems equally clear that the trustee, Charles Poindexter, under the trust deed of March 7, 1874, had no authority, *as such trustee,* to make the agreement to pay the amount of the said judgment out of the proceeds of the sale of the Texas lands, or otherwise to bind the interests of his *cestuis que trust* to pay the same. He was authorized to sell all or any of the property, and to raise money by mortgage or otherwise on the property, in order to provide the annuity for Mrs. Sarah A. Poindexter, and to pay off existing liens created by the several devisees on their individual interests, but not to pay off debts created by a devisee who had parted with his entire interest, as Alfred Poindexter had done, not only before the agreement was made, but before the judgment was rendered. Yet Chas. Poindexter himself owned one-sixth of said Texas lands. He had the right, of course, to bind himself to pay to Burwell the amount of said judgment out of and to the extent of one-sixth of the proceeds of the sale of said lands. The language of the agreement does not point distinctly *to his own one-sixth,* but it is proper to give it that construction in order that effect be given to the instrument, and justice be done, on the principle of *ut res magis valeat quam pereat.* Such an agreement does bind him personally, and is a charge upon his own undivided

one-sixth part of the Texas lands. He has the option to sell said sixth, and apply its proceeds to the judgment, so far as necessary. If said proceeds do not suffice to pay the judgment and costs, Burwell can demand no more of Chas. Poindexter— who, however, must either sell and apply the proceeds, so far as requisite, or he must pay. the judgment out of his pocket. .And he must evidently sell or pay within a reasonable time. If he does not sell or pay within a reasonable period, then the chancery court, having jurisdiction over his person, may compel. him to convey his said one undivided sixth part of the Texas lands to the complainant below. There is no jurisdiction in the chancery court to decree the sale of said one-sixth,. nor to set it apart from the remaining five-sixths by partition. But there is jurisdiction to pronounce personal decree against Charles Poindexter for the amount of said judgment and costs, to be paid within a prescribed period, and in the event of its non-payment, directing that he shall convey his said undivided one-sixth part of said Texas lands to said Burwell. There could be no hardship in such a decree. It gives Charles Poindexter the option to convey the land and keep the money, or to keep the land and pay the money. In view of his agreement, he has no just claim to keep both. Applying these. principles, then, to the agreement as thus construed, the demurrer seems to have been properly overruled. The case made by the bill, with the prayer for general relief, was a case proper for the jurisdiction of the court below, although that court could not rightfully afford all the relief that was asked for; nor, in fact, all that it decreed.

It is true, the agreement, as asserted in the bill, and as held by the court below, as being intended to bind the interests of the other devisees besides Charles, was *ultra vires*, and beyond his power to make; but as it is alternatively set forth in the bill, and as it has herein been construed—that is, as binding

only his own undivided one-sixth interest in the Texas lands, that agreement does entitle the complainant below to some relief in a court of equity; yet, certainly, not to the relief decreed him by the court below in the decree complained of here. Therefore, the court is clearly of opinion that the said decree is erroneous. The court below not only exceeded its jurisdiction by directing sale to be made by its own officers of land lying outside this State, but also in ordering the sale of lands belonging to persons who are not at all bound by the agreement sued on by the complainant.

The decree must, therefore, be reversed, and, without considering other assignments of error, the cause must be remanded to the chancery court of the city of Richmond for further proceedings to be had therein in conformity with the views expressed in this opinion.

DECREE REVERSED.