## Wytheville.

### VAUGHT AND OTHERS V. MEADOR.

#### JULY 4, 1901.

#### Absent, Keith, P.

1. FOREIGN JUDGMENTS—*Force and Effect—Contracts.*—The validity of a contract upon which a judgment is rendered in a foreign State by a court of competent jurisdiction is established by the judgment, and the judgment must be given the same credit and effect in this State, when sought to be enforced here, as it had in the State where rendered.

2. CHANCERY JURISDICTION—*Complete Relief—Legal Remedies.*—When a court of equity acquires jurisdiction of a cause for any purpose, it will retain it and do complete justice between the parties, enforcing, if necessary, legal rights, and applying legal remedies to accomplish that end.

3. CHANCERY JURISDICTION—*Domestic Decrees—Extra-Territorial Effect on Parties—Fixing Rights and Equities in Foreign Lands.*—Decrees of the courts of this State will not operate to transfer title to land in another State, but with respect to all matters and things properly adjudicated and determined by the court, they are binding upon the consciences of the parties thereto; and, when a decree finds and determines the equities of the parties in respect to land in another State, and directs a conveyance by the parties in accordance with their equities, such decree, although no conveyance has been executed, may be pleaded as a cause of action or ground of defence in the courts of the State where the land is situate, and is there entitled to the force and effect of record evidence of the equities therein determined, unless impeached for fraud.

4. CHANCERY JURISDICTION—*Domestic Decrees—Extra-Territorial Effect—Cloud on Title to Foreign Lands—Fraud.*—A court of equity, having jurisdiction of the parties, may compel a defendant to release and discharge an apparent cloud upon the title to land situate in another State; or may vacate a title or power affecting lands in another State, when obtained by duress or fraud; or if such lands have been converted into money, or money has been realized from them, by

VOL. XCIX—72

one acting under a fraudulent title or power, may compel him to account.

5. CHANCERY JURISDICTION — *Enforcing Foreign Judgments—Defences—Fraud—Set-Off.*—If a non-resident complainant, seeking to enforce a foreign judgment in this State, has obtained property of the defendant by fraud, so that he should be treated as trustee for the defendant, the parties should be restored to the positions they occupied before the fraud was committed, or the value of the property should be set off against the judgment, and, if there be an excess, a decree should be rendered therefor in favor of the defendant against the complainant.

Appeal from a decree of the Circuit Court of Giles county, pronounced June 1, 1900, in a suit in chancery, wherein the appellee was the complainant, and the appellants were the defendants.

*Reversed.*

The opinion states the case.

*Samuel W. Williams,* for the appellants.

*Henson & Mason,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

January 27, 1892, Rufus F. Vaught and Elizabeth H. Vaught, his wife, residents of the county of Mercer, West Virginia, executed a deed to one J. W. Hale, trustee, of the same county and State, conveying to him a tract of 162½ acres of land situated in said county, "in trust to secure payment of a note executed January 25, 1892, by Rufus F. Vaught, payable one day after date, with interest from date, to the order of Meador and Pack, for the sum of three hundred and 31-100 dollars." On the 23d of March, 1897, Meador obtained, before a justice of the peace in the county of Mercer, a judgment against Rufus F. Vaught and Elizabeth H. Vaught, his wife, for the sum of three hundred dollars, principal, and one hundred and forty-one dollars, interest, the whole amount aggregating $441, to bear interest from the

date of the judgment.   The summons of the justice upon which
the judgment was rendered shows that the action was "for the
recovery of money due by note," and the proof in this record
leaves no room to doubt that the note was none other than the
note of Rufus F. Vaught secured by the deed of trust above
referred to, but it does not appear whether the land embraced
in the deed of trust was that of Rufus F. Vaught, or his wife.

To the April rules, 1897, of the Circuit Court of Giles county,
R. G. Meador brought suit by way of foreign attachment in
equity against Rufus F. Vaught, Elizabeth H. Vaught and
others, and in his bill sets out the above mentioned judgment,
and avers the non-residence of Rufus F. and Elizabeth Vaught;
that the latter was a married woman at the time of the rendition
of the judgment; that she was a daughter of one John A. Cook,
who had a short while before died intestate, leaving valuable real
estate in the county of Giles, which descended to his heirs at law,
and also some personal estate; and that the plaintiff has the
right to come into a court of equity and have Elizabeth Vaught's
interest in the realty and the personalty of which her father died
seised and possessed, attached and subjected to the payment of
his debt.

Elizabeth Vaught appeared at the May term of the court,
1897, and filed her special plea of coverture, to the filing of which
the plaintiff objected, and the court, without passing on the ex-
ception, made its decree directing certain accounts to be taken.

At the May term, 1899, of the court, the plaintiff confessed
the truth of the plea of coverture, and Rufus F. and Elizabeth
Vaught filed their joint demurrer and answer to the bill, to which
answer the plaintiff filed exceptions in writing, which were sus-
tained by the court, and the greater part of the answer stricken
out.   Whereupon, Rufus F. and Elizabeth Vaught filed their
joint amended answer, which was also stricken out on written
exceptions thereto.

By that part of the original answer which was stricken out

the defence sought to be made was that the plaintiff's judgment had been paid and fully satisfied. The answer averred that, after the judgment was rendered, and before this suit was brought, the trustee in the deed of trust which had been given by the respondents on the Mercer county land to secure the debt for which the judgment was given had executed a deed purporting to convey the land to the plaintiff; that the recitals in the deed that the land had been sold as required by law and purchased by the plaintiff were false and untrue; that the land was not advertised nor sold as required by law, nor as required by the trust deed; that the trustee acted at the pretended sale as the bidder for the plaintiff, and bid off the land for him at $100, which was such a ruinous and outrageous sacrifice of it as would shock the moral sense of a chancellor; that the land at the time of the pretended sale was worth at least $1,000, and plaintiff had thereafter sold it at the price of $800, and institutes this suit supported by affidavit claiming the whole of his debt, not even giving credit for the $100. The respondents sought to set up this fraud as a defence, and to have the plaintiff account for the full value of their land so obtained by him, and the same set off against his alleged debt, and to this end asked that their answer be treated as a cross-bill.

By their amended answer, respondents sought to present the issue of payment and satisfaction.

The accounts directed having been duly taken and filed in the cause, the Circuit Court, at its May term, 1900, made a decree subjecting to the satisfaction of plaintiff's debt Eilzabeth Vaught's interest in the estate of her father.

From this decree Vaught and wife appealed to this court.

It seems beyond controversy that the validity of the contract, upon which a judgment is rendered by a court of competent jurisdiction in a foreign State, is established by the judgment, and the judgment must be given the same credit and effect in this State, in which it is sought to be enforced, as it had in the State

where rendered. 2 Black on Judgments, sec 925; *Clarke's Adm'r* v. *Day*, 2 Leigh, 172; Dicey on Con. of Laws, 435, and authorities there cited.

It is proven in this case that when the judgment in question was rendered a Justice of the Peace, under the Constitution and laws of West Virginia, had jurisdiction in a civil action based upon a note, the principal of which is not over $300, and to render a judgment thereon for the principal and its accumulated interest when the principal and interest aggregated more than $300, but the judgment should show what portion thereof was the principal of the note, and what portion was accumulated interest thereon.

The doctrine has been so often repeated in the decisions of this and other courts that it is now regarded as a well established rule that, when a court of equity acquires jurisdiction of a cause, for any purpose, it will retain it and do complete justice between the parties, enforcing, if necessary, legal rights, and applying legal remedies to accomplish that end. *Laurel Creek and Coal Co.* v. *Browning*, just decided, and authorities there cited; *ante* p. 528.

The defences sought to be set up by that part of appellants' answer stricken out by the Circuit Court grew substantially out of the same transaction with the debt sued on in this cause, and it is no answer to these defences to say that appellee here, plaintiff below, was a non-resident. He had submitted himself to the jurisdiction of the court, and it was clearly within its power to impose upon him such terms as were just and equitable, if the averments of the answer were sustained by the proof adduced to support them.

While the court's decree in such a case would not operate to transfer title to land in West Virginia, it would, with respect to all matters and things properly adjudicated and determined by the court, be binding upon the consciences of the parties thereto, and when the decree finds and determines the equities of the

parties in respect to such land, and directs a conveyance by the parties in accordance with their equities, such decree, although no conveyance has been executed, may be pleaded as a cause of action or as a ground of defence, in the courts of the State where the land is situated; and it is entitled, in the court where so pleaded, to the force and effect of record evidence of the equities therein determined, unless it be impeached for fraud. It has also been held that a court of equity, having jurisdiction of the parties, has the power to compel the defendant to release and discharge an apparent cloud upon the title to land situated in another State. On the same principle, if a title or power affecting lands in another State was obtained by duress or fraud, a personal decree may be had, upon proper averments, vacating such title or power. Or if such lands have been converted into money, or money has been realized from them, by one acting under a fraudulent title or power, he can be compelled to account, either in law or equity, as the nature of the accounts or the character of the relief may require. 2 Black on Judg., sec. 872, and authorities there cited.

In *Poindexter* v. *Burwell*, 82 Va. 507, it was held that a court of equity can act upon the person, if he be within its jurisdiction, and compel him to convey land situated in another State or *otherwise comply with its decree.*

In *Hotchkiss, Trustee,* v. *Middlekauf, &c.,* 96 Va. 649, the doctrine was upheld that, while real estate is exclusively subject to the laws and jurisdiction of the courts of the State in which it is located, and courts of equity in one State cannot decree the sale of lands of a person under disability lying in another State, in cases of fraud, trust, or contract, courts of equity having jurisdiction over the parties, may administer full relief, without regard to the nature or situation of the property, and may compel the conveyance of property which lies beyond its jurisdiction, provided it can enforce its decree by the exercise of its power over the persons before it. It is, says the opinion, no violation

of the sovereignty of one State for a court of equity of another State to compel a party before it to do an act which, if done voluntarily anywhere, would not be such violation.

Pomeroy, in discussing the jurisdiction of courts of equity in cases of fraud, says: " It is impossible, especially in the United States, to formulate any *universal* rule concerning the extent or the exercise of the equitable jurisdiction in matters of fraud, since the decisions of different courts, and in different States, are directly at variance with respect to its existence and extent, and since its exercise must depend, to a great extent, upon the circumstances of particular cases, and even upon the temperaments and opinions of individual judges.  The jurisdiction, where it exists, may be exercised by granting reliefs which are wholly pecuniary and therefore legal.  In conferring these reliefs, which are purely equitable, and therefore exclusive, the power of equity knows no limit.  The court can always shape its remedy so as to meet the demands of justice in every case, however peculiar."   *   *   2 Pomeroy's Eq. Jur., sec. 910.

In a recital, in the same section, of instances in which these equitable reliefs will be afforded, the learned author says that a party obtaining property by his fraud will be regarded, with respect to the property which he has so acquired, as a trustee for the party defrauded.

If the averments of appellant's answer, asked to be treated as a cross-bill, be true (and they must be so treated in considering objections to the answer), to deny the relief they ask would in effect allow appellee, by the grossest fraud, to acquire $800 from the sale of appellant's land in Mercer county, West Virginia, on which he held a deed of trust to secure the very debt upon which is based the judgment he asserts in this cause, and give appellants no credit whatever therefor.

If it be found that appellee has, by his fraud, obtained property as to which he is to be regarded as a trustee for appellants, they should be restored to the positions they occupied before the

fraud was committed, or the value of the property should be set off against the judgment he sues on; and if there be a residue thereof a decree in favor of appellants against appellee for such residue should be given.

We are of opinion, therefore, that the Circuit Court erred in sustaining the exceptions to appellant's answer, and its decree appealed from will be reversed and annulled, and the cause remanded to be further proceeded with in accordance with the views expressed in this opinion.

*Reversed.*