## Wytheville.

## NORFOLK AND WESTERN RAILWAY COMPANY V. HAYDEN AND OTHERS.

### June 14, 1917.

### Absent, Burks, J.

1. WATERS AND WATERCOURSES—*Flooding Lands—Limitation of Actions.*—Where the injury complained of arose from the flooding of complainant's lands by reason of defendant's dam —a permanent structure—the cause of action for such injury arose at the time of the first commencement of the injury following the original erection of the dam and the right of action for all such injury, past, present and future was barred by the statute of limitations after the expiration of five years thereafter, unless there is something to take the case out of the general rule on the subject.

2. STATUTES—*Retroactive Construction—Milling Acts.*—The milling act forfeiture provision, as contained in the Code of 1887, section 1356, providing that if a mill be at any time rendered unfit for use and the rebuilding or repair thereof shall not within two years from the time of such unfitness be commenced, "the title to the land so circumstanced shall revert to the former owner, his heirs or assigns and the leave so granted shall be in force no longer," is not retroactive, and the same is true of all the preceding milling acts.

3. WATERS AND WATERCOURSES—*Milling Act.*—If the dam in the instant case was built under the milling acts, the question of whether the forfeiture provision is applicable must be decided by reference to the milling act in force when such dam was built.

4. WATERS AND WATERCOURSES—*Milling Acts—Forfeiture—Limitation of Actions.*—The milling act of February, 1745 (5 Hen. Stat. 360), the act in force when the dam in the instant case was built, provided no forfeiture penalty in case the mill was rendered unfit for use and not rebuilt within a certain time. There is, therefore, nothing in that act to take the case out of the operation of the statute of limitations, as stated in the first syllabus.

5. WATERS AND WATERCOURSES—*Milling Acts—Forfeiture.*—Where the predecessors in title of the defendant owned the land on

both sides of the stream, on which the dam was built, the forfeiture penalty provision of the milling act of October, 1785 (12 Hen. Stat. 187), extending only to the forfeiture of the one acre of land condemned for the abutment of one end of the dam to rest on, could not apply.

6. WATERS AND WATERCOURSES—*Flooding Lands—Limitation of Actions—Milling Acts.*—The preponderance of evidence in the instant case fails to show that the dam in question was established under any of the milling acts. Hence, the plaintiff has failed to establish his right to rely upon such acts, or any of them, to take the case out of the operation of the statute of limitations.

Appeal from a decree of the Circuit Court of Nottoway county. Decree for complainant. Defendant assigns error.

*Reversed.*

STATEMENT OF THE CASE AND FACTS BY SIMS, J.

This is a suit in equity by appellee, plaintiff in the court below, against appellant, defendant in the court below (hereinafter referred to as plaintiff and defendant), for an injunction prohibiting the defendant from any longer maintaining a certain dam located across Lazaretto creek a short distance below the lands claimed to be owned by the plaintiff, the latter located, on one side of and extending to the original bed of such creek, by reason of which dam from twenty to thirty acres of the alleged lands of plaintiff are overflowed by the waters of such creek—and to compel the defendant to cut such dam; and for damages heretofore caused to the alleged lands of the plaintiff by the overflow thereof and their lack of drainage caused by said dam.

There was a demurrer to the bill which was overruled. (No detailed statement need be made with reference to one ground of demurrer which was sustained and an amendment allowed and made covering same, as this is immaterial). But in the view we take of the case on the merits we need not pass upon the action of the court below in overruling the demurrer.

A number of interesting and important questions are raised by the record, the assignments of error and the able argument of counsel for plaintiff and defendant, but, in our view of it, one aspect of the case is decisive of it, so that it will be unnecessary for us to go beyond a statement of the facts bearing upon this view of the case.

The vital issue, evolved from the record by the assignments of error and the argument of counsel, is—what effect have the milling acts in this State, cited and relied on by counsel for plaintiff, upon the rights of the defendant to maintain and continue the dam in question?

Our statement of facts will be confined to those material to that question.

## FACTS.

The defendant owns and derived title to the land on which the said dam is situate, including a short distance on both sides of said creek above and below the dam, and a short distance beyond the ends of the dam abutting on both sides of said stream, by an unbroken chain of title extending back as far at least as to a deed from one Peter Randolph, Jr., to Francis Fitzgerald, Sr., of date September 2, 1911—as is conceded by brief of counsel for plaintiff. The plaintiff has not and does not claim any title to this land.

The plaintiff claims however, to own land on one side of said stream, extending to the original bed or to the thread of the stream, which land is located up stream, above said dam and above the strip of land owned by defendant aforesaid on which the dam is located—the land alleged to be owned by plaintiff which is overflowed and flooded by the back water of such stream caused by said dam consisting of some twenty to thirty acres, as aforesaid.

Further,

The plaintiff claims that the said dam "was built under the milling acts" of Virginia by one John Winn some time

prior to June 7, 1798, as appears, it is alleged from the following orders oi court of Nottoway county in which said dam is located:

"In ————— Court of said county, June 7, 1798, Old Order Book No. 2, page 157:

"On motion of Peter Randolph by George Craghead, his attorney, and for reasons appearing to the court, a further time of twelve months, is allowed him from this day to rebuild the mill formerly John Winn's on the Lazaretto creek in this county, with a dam to stagnate the same water which said Winn was formerly entitled to."

In ————— Court of said county, June 6, 1799, Old Order Book No. 2, page 321:

"On motion of Peter Randolph and for reasons appearing to the court a further time of twelve months from this day is granted him to rebuild the mill formerly John Winn's on Lazaretto creek in this county, with a dam to stagnate as much water as the said Winn was entitled to."

The deeds appearing in the record evidence that one John Winn owned the land above mentioned on both sides of said creek on which said dam is situate as aforesaid, included in a larger tract, at some time during the period between February 6, 1758, and April 13, 1782.

Therefore, if the dam in question "was built under the milling acts" by John Winn, this must have been done between February 6, 1758, and April 13, 1782, or say, between 1757 and 1783.

### THE MILLING ACTS.

Between the dates 1757 and 1783 the milling act in force was that of February, 1745, the material parts of which are as follows:

"II. * * * any person or persons willing to build a water mill on some convenient run and having land only *on one side* thereof, shall petition the court of that county wherein the land *on the other* side of such run *lie,* for *one acre* to

be *laid off,* which court is hereby authorized and required upon such petition * * * to issue their order to the sheriff commanding him to summon a jury of twelve free holders of the vicinage to meet upon *the land petitioned for;* who being met * * * shall diligently view and examine the said land and the lands adjacent thereto, on both sides of the run * * * which may be affected or laid under water by building such mill, together with the timber and other conveniences thereon, and shall report the same, with the true value of the *acre petitioned for,* and of the damages to the party or any other person or persons * * * to the court whence such summons issued * * *; and thereupon, if it appears reasonable to such court, and if it take not away houses, orchards or other immediate conveniences, then they may and are hereby authorized and impowered to grant *such acre* to the petitioner and order the return thereon made to be recorded; which shall be a good and effectual seizin in law to the petitioner paying down the valuation money of *the land* and damages reported by the jury to the party or parties legally entitled thereto, and shall create *a fee simple* in the said *acre of land* to the petitioner, his heir or heirs" * * *.

"III. * * * that no person or persons whatsoever, after passing this act, shall erect any mill, notwithstanding he or she has land *on both sides* of a creek or run * * * without petition first exhibited to the county court, who are to consider whether the adjacent lands of other persons will be affected thereby; and in that case to order a jury to value the damages and make report thereof in manner hereinbefore directed, and thereupon to grant or reject such petition; but when the petitioner's land extends so far on both sides as not to affect or overflow the land of any other person, the court may, if they see cause, grant leave to the petitioner for erecting such mill, without ordering any jury. And if any person shall thereafter presume to build

any mill without such leave first had, he or she *shall be liable to the action of the party grieved for his or her damages."* (5 Hen. Stat. 360).  (Italics supplied.)

It was not until the act of October, 1785, that any penalty was added to said statute law as it was in force under the act of February, 1745, other than the liability to "the party grieved" in an action *for damages.*  By the act of October, 1785, section II of the said former act was amended, by the addition of the following:

"* * * But if he shall not within one year thereafter" (after the order of court aforesaid) "begin to build the said mill and finish the same in three years and afterwards continue it in good repair for public use, or in case the said mill or dam be destroyed, if he shall not begin to rebuild it within *one* year after such destruction, and finish it within *three* years, then *said acre of land* shall *revert to the former proprietor and his heirs"* * * *.  12 Hen. Stat. 187 (Italics supplied.)

It was not until the act of March 2, 1819, that there was added any further penalty to the penalty aforesaid, of forfeiture to the former proprietor or his heirs of the *one acre* of land condemned, for failure on the part of the mill owner whose mill "was built under the milling acts" to begin reconstruction within *one* year and complete it within *three* years in case the mill or dam was destroyed.  That is to say:

After providing in section 6 substantially the same penalty above shown, as contained in the act of October, 1785, as follows:  " * * * *the title to any land condemned under this act* shall revert to the former owner, his heirs or assigns" (*i. e.,* the title to the one acre condemned thereunder for the abutment of one end of the dam), there was added by the act of March 2, 1819, the further penalty— "and the leave granted by the court to erect any such mill * * * or dam shall cease and be void."

2 Rev. Code 1819, p. 227.  (Italics supplied.)

In subsequent milling acts it was provided, in effect, that if necessary therefor, more than one acre might be condemned for an abutment or abutments of the dam; that the owner of land on any water course, whether he owned the land on either side of it at the point where the dam was desired to be erected or not, might petition the court as aforesaid; and that condemnation proceedings aforesaid might be had by one proposing to build "a water mill, water grist mill or other machine, manufactory or engine, useful to the public."

In the act of March 2, 1819, it was provided that the jury, in execution of the writ of *ad quod damnum,* should "locate and *circumscribe* by certain metes and bounds" *the one acre* aforesaid petitioned for "for an abutment" for the same.

In the milling acts subsequent to that of March 2, 1819, it was provided that if the *"mill manufactory, machine or engine* be at any time destroyed or rendered unfit for use," (leaving out any reference to the "dam" in this connection) "and the rebuilding or repair thereof shall not within two years from the time of such destruction be commenced," (instead of within *one* year as formerly) "and within *five* years" (instead of *three* as formerly) "from that time be so far finished as then to be in good condition for use, *the title* to *the land so circumscribed* shall revert to *the former owner, his heirs or assigns* and *the leave so granted shall then be in* force no longer" * * * (see Acts Assem. 1821-2, p. 23; Acts Assem. 1825-6, p. 32; Code 1849, pp. 328-9, 330; Code 1887, sec. 1347 to sec. 1356.)

(The other milling acts subsequent to 1745—which, however, are not material to the instant case beyond what has been said of them above—are as follows: Code 1814, p. 277; Acts Assem. 1806, p. 12, Code of Va. 1887, sec. 1356).

### As to the Repair of the Mill.

"Some time in November, 1910 * * * The mainwheel of the mill in the instant case was broken, rendering the mill" unfit for use.   The mill was not subsequently used until "December 2, 1913."   Repair work on the mill was begun in "November, 1913," and completed "December 2, 1913."

The use of the mill by defendant, beginning with December 2, 1913, for grinding grist was a nominal one only. The real use made of the mill pond by defendant was that of pumping water therefrom to supply its needs in its business as a railway company.   This use has been made of this mill pond by defendants since June, 1912.

### Other Facts.

This suit was instituted in January, 1915.

The dam in question had then been unbroken, ponding the water of said creek back and flooding the said land of plaintiff continuously from about January 1, 1907, as maintained by the defendant and its immediate predecessors in title—a period of eight years.   Prior to that time this dam had been in existence, maintained by the predecessors in title of the defendant, so ponding the water of said creek and flooding the said land of plaintiff and his predecessors in title continuously, since its erection, over a century before, according to the record, except when the dam was temporarily broken by freshets and would remain awhile unrepaired; and the affirmative and uncontradicted testimony of the oldest inhabitants of that locality is to the effect that at no time within the memory of living witnesses up to January, 1915, was the dam left broken and unrepaired as long as two years at any one time.

The decree complained of was entered by the court below on May 31, 1916, and, so far as material is as follows:

"* * * it appearing to the court that the dam across Lazaretto creek creating the Fitzgerald mill-pond was established under the milling acts of the State of Virginia, and that the defendant by failing to commence the repair of the mill within the time required by law, between the years 1910 and 1913 forfeited their right to maintain the said dam, and have no authority to maintain the said dam, and flood the lands of M. M. Hayden, the court doth adjudge, order and decree that the prayer of said bill be granted, and the defendant is hereby ordered and directed to cut the said dam across Lazaretto creek and permit the water to flow without interruption or hinderance in the channel of said creek. And it is further ordered that the question of damages to the land of M. M. Hayden by reason of the flooding of said Hayden's land be and is hereby reserved for the further decrees of this court."

*F. S. Kirkpatrick* and *W. Moncure Gravatt,* for the appellant.

*H. H. Watson* and *T. Freeman Epes,* for the appellees.

SIMS, J., after making the foregoing statement, delivered the opinion of the court.

It is apparent from the above statement of facts that unless there is something to take this case out of the general rule operating on the subject, if it were conceded that the plaintiff has proved title originally in himself to the land he claims to own (which is controverted and upon this question we do not find it necessary to pass), since the injury of which he complains arose from the flooding of his lands by reason of the dam above mentioned—a permanent structure—the cause of action for such injury arose at the time of the first commencement of the injury following the original erection of the dam and the right of action for all

such injury, past, present and future was barred by the statute of limitations after the expiration of five years thereafter. (*Norfolk County Water Co.* v. *Etheridge,* 120 Va. 379, 91 S. E. 133.) So that when the land claimed to be owned by plaintiff, was in the hands of his predecessors in title, over a century ago, as well as since, and while it has been in his own hands, all right of action for all injury aforesaid has been barred many times over by the statute of limitations; unless, as above suggested, there is something to take the case out of the operation of such statute. The plaintiff relies upon the milling acts above referred to to do this. He relies upon the forfeiture penalty of such acts as they are contained in section 1356 of the Code of Virginia 1887 which provides that "* * * if such mill * * * be at any time rendered unfit for use and the rebuilding or repair thereof shall not within two years from the time of such * * * unfitness, be commenced * * * the title to the land so circumstanced shall revert to the former owner, his heirs or assigns and the leave so granted shall then be in force no longer" * * *, to give the plaintiff a right of action which the bill seeks to protect by the injunction prayed for.

The milling act forfeiture provision aforesaid as contained in the 1887 Code of Va. is not retroactive in its form or effect. The same is true of all the preceding milling acts. Hence, if it were considered that the dam in the instant case was built under the milling acts (which fact is controverted and is unnecessary for us to decide) the question of whether the forfeiture provision aforesaid, relied on by the plaintiff, is applicable to the instant case, must be decided by reference to the milling act in force when such dam was built.

Now, as we have seen above, the milling act in force when the dam in the instant case was built, was the February, 1745, statute. The statute provided no forfeiture penalty whatever. Therefore, if it were conceded that the said dam

was established or built under such milling act, there is nothing therein to take the case out of the operation of the statute of limitations aforesaid, and the plaintiff is left without any standing in court.

If the dam in the instant case could be considered as having been established or built under a milling act at a later date than the act which was in force from 1745 to October, 1785, even as late as 1811, just prior to its coming into the ownership of Francis Fitzgerald, Sr., or at any date between the enactment of the October, 1785, milling act and September 2, 1811, the forfeiture penalty provision of the last named act would govern the case. That provision, as we have above seen, extended only to the forfeiture of the one acre of land condemned for the abutment of one end of the dam to rest upon. As we have seen, from the statement of facts above, the predecessors in title of the defendant at that time owned the land on both sides of the stream on which the dam was built—as is uncontroverted before us— so that there could have been no condemnation of such one acre of land, and hence no later forfeiture of it, under the milling act of October, 1785.

It was not until the passage of the March 2, 1819, milling act that the further forfeiture penalty provision was enacted that, "* * * the leave granted by the court to erect any such mill * * * or dam shall cease and be void." This was not retroactive in its purport or effect, as aforesaid. And this was long after the dam in the instant case was erected, as appears beyond all question from the record.

What has been said above proceeds upon the consideration of this cause as if the dam in question was established under the milling acts as aforesaid. The case may be considered from another point of view. The preponderance of the evidence in the cause fails to show that such dam was established under any of such acts. Hence, upon this ground also, the plaintiff has failed in establishing his right to rely upon such acts or any of them to take this case out of the operation of the statute of limitations aforesaid.

Therefore, without considering the many other interesting and important questions in the case, for the reason stated above, we are of opinion that there was error in the decree complained of for which it must be reversed, and this court will enter such decree as the court below should have entered dismissing the plaintiff's bill.

*Reversed.*