NATHAN G. McWHORTER *v.* CITY OF CLARKSBURG

(No. 6684)

Submitted April 22, 1931.   Decided June 10, 1931.

*Melvin G. Sperry, Steptoe & Johnson,* and *James M. Guiher,* for plaintiff in error.

*Deem & Moist* and *Howard Caplan,* for defendant in error.

LITZ, *President:*

Plaintiff, Nathan G. McWhorter, obtained a verdict and judgment of $450.00 against the defendant, City of Clarksburg, for injury to his land (bordering West Fork River in Harrison County) from flowage caused by a concrete storage

dam which it maintains across the river at West Milford, two and one-half miles below said land. This dam was constructed by the city in 1922 to displace a stone and wooden mill dam built about 1819 to operate a gristmill erected at the time. A roller process flouring mill, sawmill, and planing mill, added in later years, was operated by the same water power. This action was instituted less than thirty days before the expiration of five years from the completion and filling of the concrete dam. The plaintiff contends that flowage rights for the mill dam were condemned under the Mill Acts of Virginia at the time of its construction and that it was never used or maintained as a storage dam. Defendant denies that flowage rights were so condemned, and asserts that the mill owners, by maintaining the original dam without condemning any flowage rights, acquired general flowage rights by prescription, to the extent of the resulting flowage, and, further, that if flowage rights were so condemned, it, nevertheless, by using the old and new dams for storage purposes, is entitled to continue such use of the new dam to the extent of the flowage caused by the old barrier. An additional contention of the city in the trial court, that a right of flowage condemned for mill purposes would authorize the condemnor and his successors in title to maintain a dam for storage purposes, seems now abandoned. To establish a right of flowage by condemnation for mill purposes, plaintiff introduced in evidence; an order of the county court of Harrison County, dated August 22, 1817, as follows: "On motion of Jacob Romine, and on his petition and application to build a dam across the West Fork River of the Monongahela River, to abut on the lands of Thomas Estlack, for the purpose of driving a gristmill and other machinery, and the said Thomas Estlack waived notice and consent to this application. It is therefore ordered that a writ of *ad quod damnum* issue, directed to the sheriff of this county to summon twelve free-holders, nowise related, to meet upon the said land on the 30th instant, and then and there execute the same according to law and make return"; an order, dated September 15, 1817, stating: "On motion of Jacob Romine it is ordered that an alias writ of *ad quod damnum* issue, directed to the sheriff, to meet on the

land of said Jacob on the 20th day of this month then and there to execute the same according to law and make return''; a writ of *ad quod damnum,* dated September 19, 1817, in the words and figures following: ''The Commonwealth of Virginia. To the Sheriff of Harrison County, Greetings: You are hereby commanded that you empanel twelve good and lawful freeholders of your bailiwick to meet on the lands of Jacob Romine on the 20th instant, on the West Fork River, and that you then and there swear them diligently to lay off by metes and bounds and ascertain the value of one acre of land on the West Fork River, the property of Thomas Estlack, whereon the said Jacob Romine wishes to erect an abutment to his dam for the purpose of working a water gristmill and other machinery, and to inquire what damages may be done to the properties of or lands above and below the place where the said Jacob wishes to erect his said dam; also whether the mansion house, offices, curtilage or gardens will be overflowed, and whether and in what degree the passage fo fish and ordinary navigation may be obstructed, whether the health of the neighbors will be annoyed by the stagnation of the water occasioned by said dam, and their inquest so made being signed and sealed, you return together with this writ before the justices of our county court''; the report of the freeholders so empanelled, as follows: ''Pursuant to the writ hereto annexed, we, the jury, being first sworn and charged according to law, on the 20th day of September, 1817, being upon the premises in the writ mentioned, as in and by the said writ we are required to examine what damages may result from the erection of the dam in the writ aforesaid, for the working of a water gristmill and other machinery on the West Fork River mentioned in the writ aforesaid, on the land of the said Jacob Romine in the county of Harrison, and the abutment of said dam on the lands of Thomas Estlack on the opposite side of said river, in the county aforesaid, upon our oath do say that the passage of fish will not be obstructed as to damage the neighborhood, that the health of the inhabitants will not be annoyed by the stagnation of the water, nor the gardens, mansion house, offices, curtilage or orchard of any person or persons overflowed by

raising said dam eight feet high; and for the one acre of land which will have to abut said dam against, the property of Thomas Estlack lying twenty rods on the river and eight rods wide we value at $1.00''; a deed, dated June 16, 1817, from Jesse Lowther and wife to Samuel Clemans and Jacob Romine, conveying two acres of land (by courses and distances) on West Fork River in Harrison County; assessment for taxes to Samuel Clemans and Jacob Romine for 1819, of two acres of land valued at ten dollars; assessment for taxes to Samuel Clemans and Jacob Coplin, for 1820, of two acres of land valued at $2,050.00; a deed, dated September 20, 1853, from Samuel Clemans and wife to Olphey L. Madsker conveying two acres of land in the town of West Milford on West Fork River "known as the Clemans Mill Property" and "one acre situate on the South bank of the river opposite" thereto "* * * and the same condemned at the instance of said Clemans for the purpose of abutting his mill dam"; and several subsequent deeds in the chain of title containing similar recitals.

For the purpose of showing that it had acquired a right of flowage by prescription, the city adduced evidence tending to prove that the flouring mill ceased operation in 1912 or 1913 and the gristmill, sawmill and plaining mill in 1915 or 1916; that no repairs were made to any of the mills or to the old dam for their maintenance after they had thus ceased operation; that it, with authority of the owner, maintained the old dam to store water for municipal purposes from July 31, 1913, to December 19, 1919, at which time it acquired title to the dam and the other mill property; that thereafter it continued to maintain the old dam to store water for municipal purposes until the construction of the concrete dam in 1922; and that the mill buildings were removed in 1925. It also offered, but was not permited, to show that the cessation or abandonment of the mills, as indicated, soon became common report in the community.

If the city is still insisting upon the claim that the condemnation of flowage rights for mill purposes entitled the condemnor and his successors in title to maintain a storage dam without liability to the riparian owners, we unhesitatingly

condemn an instruction given predicated thereon. "The payment of damages assessed for the benefit of the upper proprietors is not the sole consideration upon which the miller receives the right of flowage, but there is the further consideration that he shall construct, equip, and operate a gristmill for the benefit of the public. If he does not, the consideration for his grant fails, and the upper proprietors ought not to hold their lands in bondage to him." *Gross* v. *Jones,* (Neb.) 122 N. W. 681. The main point of error relied on is the granting of an instruction on behalf of the plaintiff as follows: "The Court instructs the Jury that the plaintiff has a right to avail himself of the streams flowing through and along his property for drainage purposes to their fullest extent and if you believe from the evidence that by its storage dam the defendant has ponded the water of said streams upon and along the land of the plaintiff, and that by said ponded water the height of the water in said streams has been raised on and along the land of the plaintiff and as a result thereof the raising of the water on and along the land of said plaintiff has interfered with the use of said streams to their fullest extent for the drainage of his said land incident to the reasonable use thereof for agricultural, farming and trucking purposes, then the plaintiff is entitled to recover herein such damages as the evidence shows, if any damage is shown by said evidence, and any such damages, if any, shall be included with any other damages you may find the plaintiff is entitled to if any and the measure of the whole damages, if any, including all separate items of damage, if any, shall be the difference in the fair market value of the entire farm immediately before the injury and its fair market value immediately after the injury allowing for special benefits, if any, but not general benefits, if any." We cannot agree with counsel for plaintiff that this instruction does not direct the jury to find for plaintiff against defendant the damages caused to his land by its maintenance of the present storage dam, as we think it does so state. It is binding and therefore erroneous in that it ignores the defense of prescriptive right. "Binding instructions which ignore the theories of defense, or narrow its scope covered by the evidence, are bad. They

must be broad enough to present all material phases of the issues to which they relate, and must submit conflicting theories." *Shires v. Boggess,* 72 W. Va. 109.

Is the evidence sufficient to establish the flowage rights for mill purposes by condemnation? The records offered of the condemnation proceeding go no further than the report of the jury's inquisition which does not deal with the flowage rights. Discussing the method of proving judicial records, Greenleaf on Evidence, Vol. 1, section 509, states: "If the record is lost, and is ancient, its existence and contents may sometimes be presumed; but whether it be ancient or recent, after proof of loss, its contents may be proved like any other document, by any secondary evidence, where the case does not, from its nature, disclose the existence of other and better evidence." It is not shown whether the records of the county court were irregularly or carelessly preserved, the incomplete records having been introduced without explanation. It will be observed also that the recitals in the deeds relied on refer only to the mill site. It is our conclusion that the evidence does not warrant the finding that any flowage rights were ever condemned. Moreover, we are of opinion that the maintenance of the original dam for the statutory period for mill purposes entitled the mill owners and their successors to continue its use for general purposes to the extent that the servitude of the riparian lands was not thereby increased. *Norfolk & Western Railway Company* v. *Hayden,* 121 Va. 118. "The extent of the privilege acquired is determined by actual user while the right is being acquired. * * * And so long as he (the mill owner) keeps within the limits of the right which he has acquired, he may make such changes in the manner of using his rights as he desires." Farnham on Waters and Water Rights, section 542.

With this view of the case, the recovery of plaintiff should be limited to the damage due to additional flowage, if any, caused by the new dam.

The judgment is therefore reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*

DECEMBER 12, 1931. REHEARING UPON MATTER OF COSTS

Chapter 138, section 11, Code 1923 (55-2-11, Code 1931), provides that in every case in an appellate court, costs shall be recovered in such court by the party substantially prevailing. It is contended on behalf of defendant that it is entitled to costs because of the reversal of the judgment on an instruction in behalf of plaintiff fixing an improper basis of damages. Plaintiff, on the other hand, contends that the instruction for which the judgment was reversed was not intended to deprive defendant of all defenses to the action and was so understood by the jury, as evidenced by its conservative finding. Plaintiff further relies upon his cross-assignment of error, based upon an improper instruction for defendant. In view of the fact that the trial court was led into error by both parties, and that the evidence clearly warranted the verdict upon the law as found by this Court, we cannot say that either party has substantially prevailed, and, therefore, direct that plaintiff and defendant bear their respective costs in this Court and the trial court.