# 𝔖taunton

## M. H. CHAPMAN AND D. W. CHAPMAN v. A. CARY DELK, ET ALS.

September 10, 1941.

Record No. 2389.

Present, Campbell, C. J., and Holt, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Ashton Dovell* and *Jones, Blechman & Jones,* for the appellants.

*Charles B. Godwin, Jr.,* and *A. E. S. Stephens,* for the appellees.

GREGORY, J., delivered the opinion of the court.

A. Cary Delk and others filed their bill of complaint against D. W. Chapman and Maude H. Chapman, his wife. The complainants prevailed before the chancellor below and the cause is now before this court upon an appeal sought and obtained by the Chapmans.

This suit was instituted on October 23, 1939. Process was issued, served and returned in October, 1939. On the fifth Monday in October, 1939, the bill of complaint was filed.

More than eight months after the process was served and returned, and the bill had been properly filed, the defendants tendered a demurrer and an answer, which, upon objection of the complainants, were not permitted to be filed by the court, because they came too late under the provision of Code, section 6122. Under that section a defendant "shall file his answer or other defense in the court * * * within 90 days from the day on which process has been returned executed, * * * unless after notice to the adverse party, and for good cause shown, additional time be given by the court * * * within which to file the same. After the lapse of such period of 90 days, or such additional time, * * * no answer or other defense shall be received except for good cause shown and upon payment to the complainant of his costs up to that time, * * * ."

The court's ruling denying the filing of the demurrer and answer is assigned as error.

There being no answer or other defense, the court, without hearing any evidence, granted the prayer of the bill of complaint. This action of the court is assigned as error.

■ Unless good cause is shown an answer cannot be filed after the expiration of the 90 days. A discretionary duty is imposed by the statute upon trial courts to determine whether or not good cause has been shown for the failure to file the answer within the 90 days. After a court has heard the excuses and other reasons of a defendant for his failure to file his answer within the time, and, in the exercise of a reasonable discretion, decides that no good cause has been shown, this court will not ordinarily disturb the decision.

■ ■ Here, it does not appear that the court abused its discretion or acted arbitrarily. The defendants' counsel mainly rely upon three excuses for this failure, none of which affords the ''good cause'' required by the statute. They say that they were too busy with other pressing matters to attend to the examination of the title to the mill pond which was a necessary preliminary to preparing the answer. They also say that they desired to obtain associate counsel. Lastly, they say the cause could not have been heard sooner even if the answer had been filed in time, because Mr. Stephens, counsel for complainant, was a member of the legislature.

Failure to file an answer within the designated time because counsel was too much engaged with other legal work is not ground for extending the statutory time. We have expressly ruled on this excuse and have held that it was not ''good cause''. *Stiers* v. *Hall*, 170 Va. 569, 197 S. E. 450.

The defendants below were represented by counsel. They desired to associate other counsel. This is asserted as an excuse for failure to file the answer on time, but the record shows they were not prompt in engaging associate counsel. This was not the ''good cause'' contemplated in the statute.

It is not made clear why the suit could not have been heard earlier if the answer had been filed on time. It appears that if the answer had been filed within the 90 days, the cause could have been heard and ended in a short time.

We conclude that the court below was correct in rejecting the answer.

The appellants contend that even if the court were correct in rejecting the answer, it was without jurisdiction to enter any decree upon the bill alone because the allegations were too indefinite and vague, and without proof a decree would not be warranted. Another ground urged is that there is no equity in the bill and for that additional reason no jurisdiction exists to entertain it even though no answer or other pleading has been filed. These are matters that would have been considered if the demurrer had been filed. They are jurisdictional, and we will consider them now even though there is no demurrer. If there were no equitable jurisdiction the decree would be void.

Among the many allegations of the bill were these: That the complainants owned 85 acres lying on one side adjacent to Young's Mill Pond; that this tract was the subject of an option granted one E. C. Goodrich, but he refused to exercise the option and take the land because D. W. Chapman, one of the defendants, advised him (Goodrich) that there was some question about the complainants' boundary lines along the mill pond, and that if Goodrich bought the tract he would not be permitted to exercise any rights in the pond.

It was alleged that Chapman asserted title not only to the pond but also to the bed of the pond; that the pond was made between 1836 and 1856 under the statute relating to mills, for the purpose of operating a grist mill; that one N. P. Young acquired title to the grist mill in 1886, together with all rights and easements thereto attached and also to 8½ acres of land lying immediately below the dam; that in 1928 title to the 8½ acres to-

gether with the grantor's right, title and interest in the mill pond vested in the Chapmans. Young's Mill Pond was used as a call in the deeds to the parties.

. It was also alleged that after Chapman obtained the deed in 1928 to the 8½ acres he took possession of the pond and has since that time exercised full ownership over it. He began to clean the pond of dead wood and the like and. without the consent of complainants raised the dam three feet, thereby flooding some of complainants' lands.

It was alleged that the pond had been down for 25 years before Chapman raised the dam three feet, and that the mill had been abandoned and out of use for 40 years or more; yet he is now threatening to raise the dam another five feet which, if permitted, will flood more of complainants' land.

It is alleged that under the statute referred to, the mill ceased to exist as such, and the title to the. bed of the pond was relieved of the easement theretofore existing and is complete in the adjacent landowners.

The prayer is for the forfeiture of the permit or leave granted for the construction and operation of the dam and mill; that the dam be broken; that the flooding of complainants' land be declared a nuisance and ordered to be abated; that the middle of the pond be declared the legal boundary line of complainants' land as it abuts on the pond; that the Chapmans be enjoined from asserting any right or title in the bed of the pond, or from increasing the nuisance; and that the cloud upon complainants' title created by the unwarranted claims of the Chapmans be removed.

The applicable statute (Code 1860, at page 368) among other things provided that under certain conditions private property could be taken to establish a grist mill, and when the compensation fixed: by a jury was paid to the owner, the title to the land "circumscribed" vested in the applicant seeking leave to establish the mill. The statute also provided that the jury should award dam-

ages to the owners of the lands that would be overflowed as a result of damming the water.

The statute carried this forfeiture clause:

"If the applicant shall not begin his work within one year, and so far finish it within three years after such leave, as then to have his mill, manufactory, machine or engine in good condition for use; or if such mill, manufactory, machine or engine be at any time destroyed or rendered unfit for use, and the rebuilding or repair thereof shall not, within two years from the time of such destruction or unfitness, be commenced, and within five years from that time be so far finished as then to be in good condition for use, the title to the land so circumscribed shall revert to the former owner, his heirs or assigns, and the leave so granted shall then be in force no longer * * * ."

(For a resumé of the statutes relating to mills see *Norfolk & W. Ry. Co.* v. *Hayden,* 121 Va. 118, 93 S. E. 77.)

According to the allegation, more than two years (to-wit: 40 years) having expired after the mill became unfit for use, and during that time no attempt having been made to repair it or to make it fit for use, the statute automatically ended the leave which had been granted to operate the mill and it also caused the "title to the land so circumscribed" to revert to the former owner, etc.

The main purpose of the bill of complaint was to have the court of equity end any right that formerly existed in the predecessors of the Chapmans to operate the mill; to require the defendants to discontinue flooding complainants' land and prohibit them from raising the dam five feet whereby the lands would be more seriously flooded; and to require the defendants to break the dam and free complainants' land of the impounded water. These are all matters cognizable by a court of equity.

The prayer of the bill was mainly directed to these equitable matters. The removal of the cloud from the title and fixing the boundary line were purely incidental, and while strictly those matters generally may be for

the law side of the court, they nevertheless may be decided in an equity suit where the court otherwise has jurisdiction.

It is elementary that a court of equity, when once it has acquired jurisdiction of a cause upon equitable grounds, may make a complete adjudication, even to the extent of establishing legal rights which would otherwise be beyond its scope. It will not hesitate to pass upon a boundary dispute or to remove a cloud from the title to realty when there is an independent and substantial ground of equity jurisdiction. It has many times been said that the primary object of a court of equity is to do complete justice. *Laurel Creek Coal & Coke Co.* v. *Browning*, 99 Va. 528, 39 S. E. 156; *Vaught* v. *Meador*, 99 Va. 569, 39 S. E. 225, 86 Am. St. Rep. 908; *Shield* v. *Brown*, 166 Va. 596, 186 S. E. 33.

The allegations in the bill are definite and certain and in this cause had to be taken as true because no answer or other defense was filed. When a bill is taken for confessed, it alone is sufficient proof of all matters of fact properly and specifically pleaded in the bill. Lile's *Equity Pleading and Practice*, section 40 (c); *Welsh* v. *Solenberger*, 85 Va. 441, 8 S. E. 91; *Stiers* v. *Hall*, 170 Va. 569, 197 S. E. 450.

The applicable statute (Code 1860, Chapter 63, at page 370) as already pointed out, among other things provides that the applicant "to whom any such leave may be granted, shall upon paying to the several parties entitled thereto the compensation so ascertained, become seized in fee simple of the land circumscribed by the jury, and be authorized to proceed according to such leave." And later in the act, as we have seen, if the mill becomes unfit for use and is not repaired within two years and made ready for use within five years, "the title to the land so circumscribed shall revert to the former owner, his heirs or assigns, and the leave so granted shall then be in force no longer * * * "

According to the allegations of the bill, the mill

having been abandoned and not in use for 40 years and the pond having gone down for 25 years before it was raised three feet by Chapman, the title to the lands taken for the mill site, the dam and the race reverted to the former owners, their heirs and assigns, and the leave to operate the mill no longer being in force, the lands submerged by the water impounded were freed of the burden of the easement.

The leave to maintain the dam and to use the mill was not in force after the owner of the mill failed to comply with the statute and begin to repair the mill and make it usable within two years after it became unusable. The fixing of the boundary line between the complainants and the owners on the other side of the pond above the dam was not a matter of interest to the owners of the 8½ acres below the dam. The title to the lands on either side of the stream immediately above the dam was released from the easement. The easement to flood the lands above the dam expired when the leave to operate the mill no longer was in force.

The decree is accordingly affirmed.

*Affirmed.*