# Wytheville.

97   256
f108   861

## Cullop v. Leonard, Trustee.

### June 29, 1899.

### Absent, Riely, J.-

1. ATTORNEY AND CLIENT—*Fees—Scrutiny by Court of Equity—Burden on Attorney to Show Fairness.*—In a contest between an attorney and his client about the amount charged for fees, where it appears that the client is old and ignorant, and wholly unacquainted with the conduct of business affairs, it is the duty of a court of equity to scrutinize with jealous care the transactions between them, and see that no oppression is exercised, and no advantage taken of the necessities and inexperience of the client. It is incumbent on the attorney to show that the transactions were fair, and the fees charged reasonable and just.

2. PERMANENT IMPROVEMENTS—*Repairs to Buildings—Grasses—Fences— Ditches.*—Repairs to buildings are usually treated as permanent improvements, but the sowing of grass seeds, and the cleaning of land for cultivation, cannot be so classed. Whether the erection of fences, the digging of ditches, and the filling of gullies, are permanent improvements or not depends upon the facts of the particular case, to be controlled by determining whether the work was done and the money expended for the future benefit of the premises, or the immediate benefit of the occupant.

3. COMMISSIONER'S REPORT—*Errors on Face—No Exception Necessary.*— Errors apparent on the face of the report of the commissioner in chancery in this cause may be corrected, although no exception was filed to the report.

Appeal from a decree of the Corporation Court of the city of Bristol, pronounced May 5, 1897, in a suit in chancery, wherein

the appellants were the complainants, and the appellees were the defendants.

Reversed.

The opinion states the case.

*Fudge & Bell* and *George W. Richardson*, for the appellants.

*James H. Gilmore* and *G. E. Goodell*, for the appellees.

KEITH, P., delivered the opinion of the court.

This controversy grows out of the suit of *Cullop* v. *Smith*, formerly pending in this court, and reported in 89 Va. 258. A. M. Dickenson was counsel for Mrs. Cullop, the appellant in this suit, in the litigation which culminated in the decree from which the former appeal was taken. For his services as counsel in the Circuit Court, his client, Mrs. Cullop, an old and ignorant woman, unable either to read or to write, executed her note for the sum of $200, dated September 30, 1889, and to secure that sum, with interest, and certain advances made by him during the progress of the suit, together with a fee of $100 for his services in the Court of Appeals, the whole amount aggregating $396.39, Mrs. Cullop, together with her trustee, George W. Allison, executed a deed conveying certain real estate therein named to F. W. Leonard.

On the 2d of June, 1892, the same grantors executed a second deed of trust to the same trustee to secure A. M. Dickenson and F. S. Blair $206.07; and on the 13th of July, 1892, the same grantors executed a third deed of trust to A. M. Dickenson as trustee to secure the firm of Blair & Blair the sum of $600 for services rendered in this court in the case of *Cullop, trustee* v. *Smith, supra.* It appears that this debt has since been acquired by and is now for the benefit of A. M. Dickenson.

The property embraced in these deeds was sold, and A. M. Dickenson became the purchaser for the sum of $1,150, leaving a balance due under said deeds of about $500, and Dickenson was placed in possession of the land.

A bill was afterwards filed by Mrs. Cullop attacking these transactions between herself and Dickenson, her attorney at law, asking to have this sale annulled for a variety of causes pointed out in the bill, which do not merit particular attention, but chiefly upon the ground that Dickenson, her attorney at law, had imposed upon her ignorance and incapacity, and procured from her contracts for exorbitant fees, wholly disproportionate to the services rendered. She prays that the deed from F. W. Leonard, trustee, to A. M. Dickenson, dated October 16, 1893, may be declared void, and that she be restored to the possession of the land thereby conveyed to Dickenson; that the three deeds of trust heretofore mentioned may be set aside, or if not declared wholly void, that an account be directed to ascertain and report what is actually due under them, and that, to that extent only, they may be held valid.

Leonard, Dickenson, and Blair & Blair were made parties defendant, the last three filing their answers, and this suit, which was instituted in the Circuit Court of Smyth county, having been removed to the Corporation Court of the city of Bristol, decrees were entered affirming the validity of the two deeds of trust to secure A. M. Dickenson, and of that in which Dickenson was named trustee for the benefit of Blair & Blair, cancelling and setting aside the deed from Leonard, and directing a commissioner " to settle an account showing what would be the rents and profits of said property since the possession of the purchaser, and to report his proceedings to this court, together with all other matters deemed pertinent by himself, or which are required to be stated by any of the parties."

Under this reference the commissioner filed a report of the amounts due under the several deeds of trust, and upon several judgments therein named, making an aggregate of liens amounting to $1,857.90, as of July 18, 1897. He ascertains the rents and profits due by Dickenson during his occupancy to be the sum of $665, and that $610 is the value of the permanent im-

provements put upon the land, and stating the items of which
that sum is composed.   To this report Dickenson filed certain
exceptions, which were properly overruled.   From this decree
Mrs. Cullop obtained an appeal from one of the judges of this
court.

The facts disclosed by the record do not call for a considera-
tion of many of the questions touching the relations between
attorneys and their clients, which were discussed at the bar.   We
have only to inquire whether or not the fees secured to be paid
are, under the circumstances, an unreasonable and excessive
compensation for the services rendered.

The subject matter involved in the original suit was the owner-
ship of a two-thirds interest in a tract of land, the whole value
of which may be reasonably placed at about $2,100.   The mat-
ter in controversy could scarcely have exceeded the sum of
$1,500, and the questions litigated do not appear to have pre-
sented unusual difficulty.   The client was, as we have said, an
old and ignorant woman, wholly unacquainted with the conduct
of affairs, as is abundantly shown by this record, and, under
such circumstances, there can be no doubt that it is the duty of
a court of equity to scrutinize with jealous care transactions be-
tween such a client and her attorneys, and see that no oppression
is exercised, and no advantage taken of her necessities and in-
experience.   *Thomas* v. *Turner*, 87 Va. 1; *Huguenin* v. *Basely*,
1 Leading Cases in Equity, (Part 2,) p. 1216 *et seq;* Bigelow on
Fraud, p. 192, sec. 2; Pomeroy Eq. Jur., sec. 960 and notes.

The fees charged and secured by deeds of trust amounted to
$900, to recover property worth about $1,500, giving the attor-
ney about sixty *per cent.* of the value of the matter in con-
troversy.   Now, we do not mean to say that the foregoing facts
are conclusive of oppression or imposition upon the part of the
attorney, but they do present a case that demands the strictest
investigation by the court, and proof upon the part of the attor-
ney that the transactions between himself and his client were

fair, and the fees exacted, under all the circumstances, reasonable and just. We therefore think that the decree of the Corporation Court must be reversed, for the reasons stated, and the cause should be again referred to a commissioner, with instruction to ascertain what would be a proper compensation for the services rendered by the attorneys, A. M. Dickenson and Blair & Blair, and for whatever sums shall be ascertained to be due them, the trust deeds should be held as security.

We are of opinion that the court erred also with respect to the allowance made for permanent improvements. The making of ditches, the filling of gullies, and the erection of fences, may, or may not constitute permanent improvements. A fence may be substantial and durable in its nature, though made of wood; it may be temporary and transient, though made of wire; and so also with the ditching and filling of gullies. Was the work done and the money expended with reference to the future betterment of the premises, or for the immediate advantage of the occupant, is the consideration which should control. The sowing of grass seeds and the cleaning of land for cultivation are a part of good husbandry due from the tenant in possession, for which he expects to be compensated in the crops which he reaps, and in the grazing of his stock. They cannot, with propriety, be classed as permanent improvements. See *Lersner* v. *Bolling*, 26 Gratt. 36. Repairs to buildings are usually treated as permanent improvements. The account, therefore, which allows Dickenson $610 for permanent improvements should be recommitted, with instructions to report in accordance with the principles herein enunciated.

Appellant filed no exceptions to the account charging her with improvements, but the errors may with propriety be corrected as they appear upon the face of the account.

For these reasons we are of opinion that the decree of the Corporation Court of Bristol should be reversed.

*Reversed.*