# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

P. T. STIERS V. ELIZABETH D. HALL.

June 8, 1938.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Leon M. Bazile* and *Alfred J. Kirsh,* for the appellant.

*Meade & Talbott,* for the appellee.

HOLT, J., delivered the opinion of the court.

Here a plaintiff seeks to have cancelled her note and a lien which secures it given to an attorney for professional services.

On January 15, 1937, Elizabeth D. Hall instituted a chancery suit against P. T. Stiers and others in the Corporation Court for the city of Danville. Process was returnable on the third Monday in January, 1937; that is, on January 18th. It was served on Stiers on January 15th and duly returned. The bill was filed on February 15th and an answer was tendered on May 29th, or within 103 days. Plaintiff's depositions were commenced on May 15th and were filed on or before May 29th. The trial court rejected this answer, refused to permit Stiers to take evidence in its support, and said:

"Thereupon the court being of the opinion that no good cause has been shown by the defendants for the filing of their answers at this time, more than ninety days having elapsed since the filing of the complainant's bill, and the only reason advanced as an excuse for the failure to file the answer within the ninety days being that defendants' counsel had been so busily engaged in trial work in the courts of Virginia and North Carolina that he had not had time to prepare and file said answer, the court doth refuse to allow the defendants to file their answer at this time and doth strike and reject the answer this day left with the

clerk prior to the hearing of said motion, and doth refuse to allow said defendants to take and file proofs in this cause."

This ruling rests upon Code, section 6122, which provides that in a case like this an answer after ninety days shall not be received except for good cause shown.

■ We have been liberal in our constructions of this statute. It is not mandatory, and its applicability rests within the sound judicial discretion of the trial court. *Carpenter* v. *Ingram*, 152 Va. 27, 146 S. E. 193; *Gray* v. *Francis*, 139 Va. 350, 124 S. E. 446.

■ But plainly it means something. If one may escape its manifest salutary intent by saying that he was busy, it should be wiped away. Delay was not even due to some oversight of other counsel, for Mr. Stiers, the defendant, is a lawyer. He appeared at the taking of depositions and prepared and tendered the rejected answer. This assignment of error is without merit.

Afterwards, by final decree, the court ordered that this $500 note be canceled and that the trust deed which secured it be released for these reasons:

"It appearing to the court from the allegations of the bill of complaint in this cause which as to defendant P. T. Stiers, is taken for confessed, he having failed to seasonably demur, plead or answer thereto, and the evidence taken in support thereof, * * * ." This under the provisions of Code, section 6131.

■ When a bill is properly taken for confessed, its allegations are taken as true without proof, although the chancellor in his discretion may order the plaintiff to sustain its allegations by evidence. *Thomson* v. *Wooster*, 114 U. S. 104, 5 S. Ct. 788, 29 L. Ed. 105. Here, the chancellor did not order the taking of testimony; complainant took it on her own motion. Plainly where a plaintiff's own evidence shows that she is not entitled to judgment, no decree *pro confesso* should be ordered.

The case at bar is quite like that of *Jesser* v. *Armentrout's Ex'r*, 100 Va. 666, 42 S. E. 681. There the court said:

"It is true, there was no issue made in this case by demur-

rer, plea, or answer, but the averments of the bill do not warrant, and the court did not render a decree in favor of appellees upon the bill as taken for confessed. Witnesses were examined on behalf of plaintiff, and cross-examined by defendants, and the report of the commissioner when returned to the court was excepted to by the defendants, so that the proceedings before us were not as upon a bill taken for confessed.

■ "Not having demurred, pleaded, or answered, appellants' contention is presented to us in its least favorable aspect, for it stands upon the case made by plaintiffs in their pleadings and proof, but appellants are not thereby precluded from showing that those pleadings and proof are insufficient to warrant the decree rendered."

This brings us to a consideration of the facts as disclosed by the evidence.

Mrs. Hall's note of $500 bears date April 23, 1931, and is payable to Stiers' order ten months after date at the American Bank & Trust Company of Danville and is secured by a deed of trust on her property in Danville. It was given in these circumstances:

J. H. Dillard, who is Mrs. Hall's brother, while driving an automobile in North Carolina, struck and killed one Minnie Mills. This homicide was considered by a coroner's jury, which on the 20th of April, 1931, found that "Minnie Florence Mills came to her death by being struck by Essex Coupe driven by James Dillard and occupied by J. E. Woodall and Edward Woodal at about 1 P. M. April 20, 1931. And the said James Dillard, J. E. Woodall, and Edward Woodal be confined in the Rockingham county jail until trial in the Superior Court without bond." The substance of this is that Dillard was held without bail for first degree murder.

■ Mrs. Taylor, who was then Mrs. Dillard and Dillard's divorced wife, had these facts brought to her attention through an article in the Danville Register on April 21st. She communicated them to Mrs. Hall by long distance telephone and went to see Stiers. The next day she and Mrs.

Hall called upon him at his office. Their purpose was to secure bail for the prisoner. Stiers appears to have acted with dispatch. At his instance, a coroner's jury was again assembled, the charge was reduced to manslaughter and the bail fixed at $3,000. After one or two unsuccessful attempts, a Mr. Foy agreed to go upon the bail bond on condition that he be made secure by a trust deed on certain real estate in Danville which belonged to Mrs. Hall. Stiers went to Danville to inspect this property and to examine its title. These parties met again on the night of April 23rd in his office, when he stated that he had no confidence in Dillard and would do nothing more unless Mrs. Hall would execute to him a $500 note to be secured in the deed securing Foy. Mrs. Hall protested vigorously. She said that she could not pay this note except in inconsiderable instalments. Stiers stood firm and said that the note must· be given whether he thereafter represented Dillard or not. Afterwards, and between eleven and twelve o'clock at night, it was executed. Mrs. Hall was then half sick and threatened with a nervous breakdown. She was desperately anxious to get her brother out of jail and it was in these circumstances that this note was given. Dillard on the bail thus secured was released from jail. He was afterwards tried and acquitted. Stiers did not represent him at the trial and did nothing more. Mrs. Hall said that she was under the impression that he was her brother's counsel, but he said nothing to lead her to that conclusion. She merely took it for granted because Stiers had represented him on other occasions. We think that she and Stiers occupied the position of client and counsel. She went to see him because he was a lawyer, and the work which he was asked to do fell within the field of his profession.

Before an attorney undertakes the business of a client, and after his services are definitely concluded, contracts for fees stand upon the same footing as do other contracts. 5 Am. Jur., Attorneys at Law, sections 159 and 162. See also, *Leech* v. *Harman,* 171 Va. ——,* 197 S. E. 455.

*Petition for rehearing pending at date of this publication.— Reporter.

Where a contract is made during the existence of these confidential relations, another rule applies.

" * * * all courts agree that if the contract is suspicious, oppressive, or fraudulent, exacts an unreasonable or exorbitant fee, or was made without a fair and full disclosure of the facts on which it is predicated, it cannot be enforced against the client. It is well settled, also, that contracts between attorney and client made after the relation has been established are construed most strongly against the attorney and are regarded with suspicion and jealously and closely scrutinized by the courts. In many instances they have been declared to be voidable, even though they would be deemed unobjectionable between other parties. In fact, there is a presumption of unfairness and invalidity." 5 Am. Jur., Attorneys at Law, section 160. See also, *In re Howell*, 215 N. Y. 466, 109 N. E. 572, Ann. Cas. 1917A, p. 531.

"There is a presumption of unfairness or invalidity attaching to a contract for compensation executed by an attorney and his client after the establishment of the fiduciary relation." Note, 19 A. L. R., p. 855. To sustain the text, cases are cited from Alabama, California, Illinois, Indiana, Iowa, Maine, Nevada, New York, Ohio, South Dakota, Virginia and West Virginia.

"It follows, therefore, that the burden of showing that a contract for compensation, executed by an attorney and his client during the existence of the fiduciary relation, is fair and reasonable, and free from undue influence, rests on the attorney." Id. To support this cases are cited from Federal courts, Alabama, Illinois, Indiana, Iowa, Maine, Maryland, Michigan, Missouri, New Jersey, New York, South Dakota, Tennessee, Virginia and West Virginia.

This rule as to burden of proof is approved in *Thomas* v. *Turner's Adm'r*, 87 Va. 1, 12 S. E. 149, 668, and in *Cullop* v. *Leonard*, 97 Va. 256, 33 S. E. 611.

The underlying reasons for these rules is well expressed in *Kidd* v. *Williams*, 132 Ala. 140, 31 So. 458, 56 L. R. A. 879:

"While the confidential relation lasts, and as to its subject-matter, there must be no abuse of confidence with respect to it, by which the attorney secures an unjust advantage over the client. It is easy to see, that in such time, and as to the business in which he is employed, the attorney could make unfair and unconscionable demands to which the client would yield, although he regarded them unjust, out of the fear of the consequences of a refusal, or from the attorney's undue influence over him."

Actual fraud is not necessary, and it may be said in passing that there is no proof of fraud here.

The leading case on this subject is *Thomas* v. *Turner's Adm'r, supra.* The court tells us of the relation of the parties (page 154):

" * * * the appellee held to the appellant a relation that was doubly confidential; that is, he was not only her adviser and attorney, but he was the administrator d. b. n. with the will annexed, and she the principal legatee. True, he says the litigation had ended, and that the relation of attorney and client had ceased; but nothing is clearer from the record, than that if the relation had ceased, the influence growing out of it had not."

This was followed by *Cullop* v. *Leonard, supra.* The opinion in *Thomas' Case* is sustained by high authority, both in England and in this country. Among the conclusions reached are these:

"Tested by the equitable and wisely-established rule which applies to such cases, it is very clear that the decree upholding the transaction in question is erroneous. According to that rule all dealings between attorney and client for the benefit of the former, are not only regarded with jealousy and closely scrutinized, but they are presumptively invalid, on the ground of constructive fraud; and that presumption can be overcome only by the clearest and most satisfactory evidence. The rule is founded in public policy, and operates independently of any ingredient of actual fraud, or of the age or capacity of the client, being intended as a protection to the client against the strong influence to

which the confidential relation naturally gives rise. * * * All transactions between the parties, to be upheld in a court of equity must be *uberrima fides*, and the *onus* is on the attorney to show, not only that no undue influence was used, or advantage taken, but that he gave his client all the information and advice as against himself that was necessary to enable him to act understandingly. He must show, in other words, (1) that the transaction was perfectly fair; (2) that it was entered into by the client freely; and (3) that it was entered into *with such a full understanding of the nature and extent of his rights,* as to enable the client to thoroughly comprehend the scope and effect of it. * * * Before entering on the business of his client, an attorney may contract for the measure of his compensation, and a contract then made will stand on the same footing as any contract between other persons competent to contract. This is now settled by the statute. Code, section 3201. But a contract for compensation made after the fiduciary relation has commenced, and while it continues, will not be upheld in equity, unless it be shown not only to be reasonable, but that it was entered into under the circumstances just mentioned."

It is contended that the rules heretofore stated are softened by the opinion by Prentis, J., in *Bruce's Ex'x* v. *Bibb's Ex'x,* 129 Va. 45, 105 S. E. 570. There was a written contract between Bruce and Bibb. A bond for $5,000 was given for past and for future services. Bruce and Bibb had been lifelong friends. Bruce had been in court many times. Once he had been indicted for malicious maiming. In the course of his opinion, Judge Prentis said (page 572):

"All dealings between the attorney and client must be characterized by the utmost fairness and good faith, and transactions between them are closely scrutinized. There are cases in which such transactions have been held to be *prima facie* fraudulent, and where it is of advantage to the attorney, he is required to show not only that he exercised no undue influence, but that he gave his client all the information and advice which it would have been his duty to

give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been if the client had been dealing with a stranger. This rule, however, is not inflexible, and in those cases where owing to the death of the attorney it is impossible for his representatives to make full or plenary proof, it is not always rigorously applied. While some cases have held that all such transactions are voidable at the election of the client, the better rule and the one established by the preponderance of authority does not go so far. Although such transactions will be closely and carefully scrutinized, yet those which are obviously fair and just will be upheld, and the client is not entitled to absolute relief from such a contract, unless it be shown that he has suffered some injury through an abuse of confidence on the part of his attorney. 6 C. J., 686."

This statement was approved in *Sawyer* v. *Matthews,* 166 Va. 177, 184 S. E. 238.

It is to be observed that nothing is said by Judge Prentis which questions the rule as to burden of proof theretofore adopted by this court. Such contracts are not voidable at the election of the client. It is the court's duty to closely and carefully scrutinize them. If they are obviously fair, just and reasonable, with no suggestion of pressure, and if the parties thereto are equally capable of driving a bargain, then the burden which rests upon counsel has been successfully borne.

Certainly in the instant case this $500 note was executed under pressure; although Mrs. Hall protested, she was unable to withstand it. As a contract, it cannot be enforced, although it is proper to say that in its procurement there is no suggestion of fraud.

This cause should be remanded. There should be an issue out of chancery to determine, under all the circumstances, what is a fair, just and reasonable compensation for services rendered by Mr. Stiers as disclosed by the record. *Thomas* v. *Turner's Adm'r, supra; Cullop* v. *Leonard, supra,* and *Bruce's Ex'x* v. *Bibb's Ex'x, supra.* He cannot recover on the contract, but he must be paid for work done.

██ This issue should be heard upon the evidence now in and upon such additional, competent evidence as Mrs. Hall desires to present, Mr. Stiers to have the right to cross examine witnesses but not to introduce evidence on his own behalf. *Jesser* v. *Armentrout's Ex'r, supra.*

*Reversed and remanded.*