# Wytheville

WILLIE KING LEECH V. C. W. HARMAN, ET AL.

June 8, 1938.*

Present, Holt, Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

*Rehearing refused September 9, 1938.

The opinion states the case.

*James D. Johnston,* for the appellant.

*Showalter, Parsons, Kuyk & Staples* and *Ted Dalton,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

Charles H. King died in the year 1915 leaving a will by which he devised to his nephew, Charles W. Harman, for life, with remainder to Harman's children, a farm containing approximately 1,250 acres in Pulaski county. In addition to other provisions for his widow, the testator stipulated that the said farm should be charged with an annuity to her of $1,000. She was also to receive during her life certain produce from the farm. The devise of the farm was further subject to the payment of certain specific legacies, which have been satisfied and are not here involved.

Until 1930 the devisee, Harman, regularly paid to Mrs. King, who in the meantime had married a Mr. Leech, the annuities due her under the terms of the will. Due to financial reverses Harman was unable to pay the annuities for the years 1930, 1931, 1932, and 1933.

On May 29, 1933, Harman, being then seventy-one years old, conveyed his life interest in the farm to his five children, the remaindermen under the will of the said Charles H. King. The deed recited that it was upon the consideration that the grantees should assume the payment of the charges against the land in favor of Mrs. Leech, and that Harman, the grantor, should have the right to live in the residence on the farm for the remainder of his life.

On the 29th day of September, 1933, Mrs. Leech employed Leo S. Howard, a practicing attorney of East Radford, to collect the amount due her by Harman and his children, and entered into a written contract with him, which is one of the main subjects of this litigation. Mr. Howard claims that the contract, as signed by him and Mrs. Leech, read as follows:

"This agreement made this the 29th day of September, 1933, by and between Mrs. Willie King *Leache,* party of the first part, and Leo S. Howard, party of the second part.

"WITNESSETH: WHEREAS the party of the second part agrees to take the suit of the party of the first part against C. W. Harman and his children for the enforcement of the provisions of the will of Charles H. King. The party of the first part hereby agrees to pay to the party of the second

part for said services a fee of $25.00 if nothing is recovered and in case of a recovery the party of the first part is to pay to the party of the second part one-fourth (¼) of the amount recovered, *whether by compromise or otherwise.* (Italics supplied.)

"Given under our hands this the 29th day of September, 1933.

"LEO S. HOWARD
"WILLIE KING LEECH."

Mrs. Leech, as we shall afterwards see, contends that the italicized words "whether by compromise or otherwise," were inserted in the contract without her knowledge or consent after she had executed it.

In February, 1934, Howard, as attorney for Mrs. Leech, filed a bill in the Circuit Court of Pulaski county against C. W. Harman, his children, and others, praying that the farm be sold; that the proceeds be applied to the payment of the liens thereon, including annuities in arrears due Mrs. Leech; and, further, that such sale be subject to the payment of future annuities to her. The original bill recited the conveyance by Harman to his children of his life interest in the farm, and prayed that this deed be set aside. Subsequently an amended and supplemental bill was filed in which this prayer was withdrawn.

On April 17, 1934, Mrs. Leech wrote Brown G. Howard, the father of Leo S. Howard, who had become associated with the latter as counsel for Mrs. Leech in the litigation, as follows: "A few days ago I went to Radford and spoke with Mr. Leo Howard about trying to compromise and keep this Harman suit from going in court. * * * "

Again, on April 27, 1934, Mrs. Leech addressed a letter to Messrs. Howard & Howard, in which she said: "I have spoken with Leo Howard, also have written to him. Have called at his office twice, found him out. Can hear nothing of his approach to Mr. Harman concerning a compromise. I am very anxious to secure this. The time is short, really no time to lose."

These letters are significant in view of Mrs. Leech's later protestations that she never entertained an idea of compromise, and only agreed to such upon the insistence of her attorneys.

On June 22, 1934, Mrs. Leech and Harman entered into the following written contract, which is likewise involved in this litigation:

"WHEREAS, C. H. King, late of Pulaski County, Virginia, died on the .... day of October, 1915, and by will bearing date on October 20, 1915, and of record in the Clerk's Office of Pulaski County, Virginia, in Will Book 7, page 183, devised a certain tract or parcel of land, containing 1,250 acres, more or less, to C. W. Harman during his natural life, and the remainder to the children of said C. W. Harman, and in said will placed a charge on said land in favor of the wife of the said C. H. King, who is now Mrs. Willie King Leech, of One Thousand Dollars ($1,000) annually, and in addition to said bequest of $1,000 annually, during her natural life, required said C. W. Harman in said will to furnish the said Willie King (now Willie King Leech) annually with 60 bu. wheat, 100 bu. corn, 6 two-horse loads of wood, 1 two-horse load of straw, 3 loads hay, 30 shocks fodder, and 800 lbs. bacon, and

"WHEREAS, said C. W. Harman is in arrears in the payment of said annuity of One Thousand Dollars ($1,000) per year and the furnishing of the wheat and other farm products set forth in said will, and

"WHEREAS, said C. W. Harman, representing himself and the remaindermen set forth in said will, and

"WHEREAS, said C. W. Harman and Mrs. Willie King Leech are desirous of extinguishing all charges placed on said real estate by said will and of paying to the said Willie King Leech a gross sum in full acquittance and complete exoneration of said bequest under said will and of all said claims, demands, and charges whatsoever that the said Willie King Leech has against this property or the said C. W. Harman personally, or any of the said children under said will, and said Willie King Leech is willing to accept

the sum of Twelve Thousand Five Hundred Dollars ($12,-500) in full acquittance of said bequest, as aforesaid, and

"WHEREAS, said present owners of said property, the children of C. W. Harman, have made application to the Federal Farm Loan Board for a farm loan on the property devised to C. W. Harman during his life, and then to his children, and subject to said bequest, now, therefore, in consideration of the premises, said Willie King Leech hereby agrees and binds herself, as soon as said loan is realized on said property, to accept in her option the sum of Twelve Thousand Five Hundred Dollars ($12,500) in cash, or Twelve Thousand Five Hundred Dollars ($12,500) in Federal Farm Loan Land Bonds, and contemporaneously with the execution of said Federal Farm Loan Land Deed of Trust hereby agrees and binds herself to execute a proper deed of release, releasing and extinguishing said legacy and of all her rights and claims under the will of the said C. H. King against said property, and hereby agrees and binds herself to execute all proper releases, deeds, or other papers which may be requisite in effecting said release, upon the delivery to her of said bonds or payment of said cash to her attorney Leo S. Howard, contemporaneously with the execution of said release.

"It is further agreed between the parties hereto that unless this settlement is consummated within sixty days from the date hereof that the sum of $12,500 is to bear interest after sixty days from this date, it being contemplated that the application for said loan to the United States Federal Land Bank will be prosecuted to its completion as expeditiously as practicable.

"WITNESS the following signatures and seals on this the 22nd day of June, 1934.

"WILLIE KING LEECH  (SEAL)<br>
"C. W. HARMAN      (SEAL)"

On June 26, 1934, just four days after the above contract was executed, Mrs. Leech wrote Brown G. Howard: "I am confident Charlie Harman got off too easy. * * *

If it could have been an even $10,000 for me I would have been more comfortable. Only $9,500 is a short allowance. I feel now I was hasty."

On August 22, 1934, she addressed another letter to Brown G. Howard, in which she said: "Do you think Mr. Leo did more than $2,000 on the case? If he can take that it would surely help me and others over a hard place."

The commissioner, to whom the matter had been referred, filed a report on November 13, 1934, in which he found that the liens and charges on the land (including past due annuities to Mrs. Leech) amounted to approximately $7,600. By a decree entered on December 14, 1934, this report was confirmed and the property was ordered sold, subject, however, to future annuities due to Mrs. Leech.

Pursuant to this decree the property was sold at public auction on February 21, 1935, and was bid in by A. C. Spotts for the sum of $8,500 cash, subject to the future charges against the land in favor of Mrs. Leech. Shortly thereafter this sale was confirmed and the purchase price paid to the commissioners, who were directed to convey the property to "A. C. Spotts or to whom he may direct."

The testimony is undisputed that Spotts and Harman were acting together in the matter for the interests of Harman and the remaindermen. Spotts had acquired title to the property, subject only to the future charges thereon for the annuities payable to Mrs. Leech. If, therefore, Mrs. Leech would perform her contract of June 22, 1934, and would for the agreed consideration release her lien on the land for future annuities, this would give Spotts a clear and unencumbered title to the property, which was essential to his procuring a loan thereon. All of this Mrs. Leech understood.

On March 8, 1935, the commissioners paid to Mrs. Leech the sum of $5,000, and took from her the following receipt:

"Received of John S. Draper and Leo S. Howard, commissioners in the chancery cause of Willie King *Leache* v. C. W. Harman et al, the sum of Five Thousand Dollars ($5,000) as a credit on the foregoing contract; the balance of the Twelve Thousand Five Hundred Dollars ($12,500)

mentioned in said contract to be paid in cash as soon as the title to said property can be perfected and said money secured from the Federal Farm Loan, or other sources, on said property.

"But it is understood and agreed that the sum of Twelve Thousand Five Hundred Dollars ($12,500) is to bear interest in accordance with the terms of the contract.

"Given under my hand and seal this 8th day of March, 1935.

"WILLIE KING LEECH   (SEAL)

"B. G. HOWARD
"MILDRED BROCKMEYER."

Shortly thereafter a deed was prepared for the signature of Mrs. Leech, whereby she was to release all of her interest in the property. She declined to execute this release deed on the ground that the money for the purchase of the farm had not been obtained from the Federal Farm Loan Bank.

Thereupon Mr. Draper, representing Harman and Spotts, wrote Mrs. Leech's counsel directing his attention to the fact that the receipt which she had recently signed provided that the money was to be "secured from the Federal Farm Loan, or other sources," stating that funds had been procured to settle with her, and threatening to institute a suit against her for specific performance unless she proceeded without further delay to carry out the contract.

In response to this letter Mrs. Leech wrote Mr. Draper, on June 5, 1935, as follows: "Your letter received on my return home. Am sorry to have inconvenienced yourself and Mr. Harman. I am willing to sign the papers when the full amount due is ready to be paid."

On June 10, 1935, the parties met at the Bank of Dublin for the purpose of closing the transaction. There were present Mrs. Leech and her counsel, Spotts and Harman and their counsel, and the cashier of the bank. Mrs. Leech had already been paid $5,000 on account, and under her contract with Harman she was entitled to a balance of $7,500 with interest. The correct amount due was ten-

dered to her and she was requested to sign the deed releasing all of her claims for future annuities on the land.

Mrs. Leech refused to proceed with the matter unless the entire balance was paid directly to her and not to her attorney. For the first time it was then disclosed to Spotts, Harman, and their attorney that a controversy had arisen between Mrs. Leech and Leo S. Howard as to what amount the latter was entitled to be paid under the written contract of employment of September 29, 1933. Mr. Howard contended that he was entitled to receive one-fourth of the total amount involved in the settlement, while Mrs. Leech claimed that he should be paid only one-fourth of the amount of the past due annuities collected by him.

After the meeting of June 10, 1935, Harman and Spotts and their attorney made repeated efforts to have Mrs. Leech comply with the terms of the contract. These efforts being unavailing, on November 11, 1935, Spotts filed a petition in the pending cause alleging that he was the assignee of Harman with respect to the contract of June 22, 1934, and praying that Mrs. Leech be compelled to comply with the terms thereof and accept the balance of $7,500 (with interest) due on the agreed price of $12,500, and release all of her claims on the land.

On December 3, 1935, Leo S. Howard filed his petition in the pending cause, setting up his written contract of employment with Mrs. Leech, alleging that he had secured a compromise of Mrs. Leech's claim against Harman and his children, in that he had procured the execution of the contract whereby Spotts, as assignee of Harman, had agreed to pay to Mrs. Leech the sum of $12,500, and praying that she be required to perform her contract with Spotts, and that petitioner be allowed as compensation for his services to Mrs. Leech, in accordance with the terms of the contract of employment, one-fourth of the total amount of $12,500, with interest, which Spotts had paid into court.

In the meantime Mrs. Leech had employed other counsel who filed on her behalf answers to the petitions filed by

Spotts and Howard, respectively. Depositions were taken at length on the issues raised by these pleadings.

In the fall of 1936 the lower court entered the decree from which this appeal has been taken. This decree directed that Mrs. Leech specifically perform the contract of June 22, 1934, by which she had agreed to accept the sum of $12,500, with interest, in full settlement of her claims against the Harman land, and appointed a special commissioner to execute a release deed of her interests therein.

The court further found and decreed that Mrs. Leech had agreed under the terms of her contract with Leo S. Howard to pay him, as a fee for his services, one-fourth of the total amount recovered by him, whether by compromise or otherwise; that the amount recovered by compromise in the cause was $12,500, plus interest; that this was a fair settlement of Mrs. Leech's claim against the said land; and that the said Leo S. Howard should be paid, out of the funds in the hands of the court, for his services so rendered to Mrs. Leech the sum of $2,256.78 ($1,000 having already been paid to him).

Some months after the appeal had been allowed, the appellant filed a brief in which, for the first time, she alleged that the lower court erred in allowing the petitions of Spotts and Howard to be filed, and in adjudicating the claims therein asserted. She contended that the issues raised in these petitions were beyond the matters involved in the cause; that the suit had originally been brought merely for the purpose of subjecting the land to the payment of the annuities due her; and that this object had been accomplished before the petitions were filed.

 Aside from the fact that there is no assignment of error as to this claim, it is without merit. Each of these petitions was filed by leave of court while the cause was still pending and without any objection on the part of the appellant. No motion was made to reject either petition, but the appellant filed separate answers thereto and joined issue thereon. In due course depositions were taken on both sides without any objection to the jurisdiction of the court

to hear the matters. Having thus voluntarily submitted her rights to a court of competent jurisdiction, she can not here complain, for the first time, that the lower court had no right to hear and dispose of the matters involved in the petitions.

Taking up first the Spotts' petition, the appellant contends that the lower court erred in requiring her to specifically perform the Harman contract of June 22, 1934 (afterwards assigned to Spotts). The argument is that this contract was a mere option granted by Mrs. Leech to Harman to purchase the property, within sixty days; that it was a unilateral contract and was void for lack of consideration; that the option was not exercised within the sixty days, and hence was void, and was, in fact, abandoned by the parties.

Before taking up these particular matters, it is well to note that there is no contention on the part of Mrs. Leech that the sum of $12,500, plus interest, agreed on as the purchase price of her interest in the property, is not a full and fair compensation to her. At the time the contract was signed there was due Mrs. Leech the sum of $5,000 for past due annuities. The sum of $7,500 was to be paid her for future annuities, based on her estimated life expectancy. The testimony is undisputed that this sum was arrived at after considerable negotiations, and is a fair and adequate amount due her. And the lower court so found.

In *Shirley* v. *Van Every*, 159 Va. 762, 770, 167 S. E. 345, 347, this court quoted with approval the following from 39 Cyc. 1232: "An option, in the proper sense, is a contract by which the owner of property agrees with another that he shall have the right to purchase the same at a fixed price within a certain time. It is in legal effect an offer to sell, coupled with an agreement to hold the offer open for acceptance for the time specified, such agreement being supported by a valuable consideration, or, at common law, being under seal, so that it constitutes a binding and irrevocable contract to sell if the other party shall elect to purchase within the time specified."

It will be observed that the contract here involved does not provide that it will be void if not consummated within a specified time. Here the provision is: "It is further agreed between the parties hereto that unless this settlement is consummated within sixty days from the date hereof that the sum of $12,500 is to bear interest after sixty days from this date, * * *." Under this language the option did not, we think, expire at the end of sixty days, but the parties contemplated that it would be extended for a reasonable time upon the payment of interest on the stipulated purchase price. When accepted by Spotts, as assignee of Harman, it became a binding and irrevocable contract on the part of Mrs. Leech. *Shirley* v. *Van Every, supra.*

Furthermore, the evidence here conclusively shows that the parties did not consider that the option had expired at the end of the sixty days, and that thereafter Harman and Spotts, with the knowledge and consent of Mrs. Leech, continued their efforts to obtain a loan on the property for the purpose of consummating the deal.

As we have already seen, on March 8, 1935, Mrs. Leech signed a receipt for the sum of $5,000, stating that it was "a credit on the foregoing contract;" that the balance was to be paid in cash as soon as the title to the property could be perfected and the purchase financed; and that in the meantime the purchaser should pay interest on the purchase price.

Again, as we have also seen, Mrs. Leech wrote counsel for Harman and Spotts, on June 5, 1935, that she was ready to sign the necessary papers upon the payment to her of the balance due.

Indeed, the evidence further shows, we think, that Mrs. Leech was entirely willing to perform the contract with Spotts, as assignee of Harman, even as late as June 10, 1935, when the parties met to close the transaction. At this conference she declined to accept the balance due her and refused to consummate the transaction, solely on account of the controversy which had arisen between her and her coun-

sel, for which neither Spotts nor Harman was in any way responsible.

Under the facts and circumstances here related, we think the lower court was right in decreeing that Mrs. Leech should specifically perform the contract with Spotts, the assignee of Harman.

We turn next to appellant's contention that the court erred in decreeing that Leo S. Howard was entitled under his written contract of employment with Mrs. Leech to be paid one-fourth of the total amount ($12,500 plus interest) collected for her.

Mrs. Leech's contention is that she employed Mr. Howard merely for the purpose of collecting the past due annuities payable to her by Harman, and that his compensation should be limited to one-fourth of the collection of $5,000, with interest.

We are not here called upon to decide what would have been a fair and reasonable fee to be paid to Mr. Howard for the services rendered to his client. There is no evidence in the record from either side as to whether the charges are reasonable or excessive.

Furthermore, the contract here involved was entered into before the relation of attorney and client had existed between the parties. As this court said in *Thomas* v. *Turner's Adm'r*, 87 Va. 1, 13, 12 S. E. 149, 153, 668: "Before entering on the business of his client, an attorney may contract for the measure of his compensation, and a contract then made will stand on the same footing as any contract between other persons competent to contract. This is now settled by the statute. Code, sec. 3201."* See also, *Stiers* v. *Hall* (decided at this term), 170 Va. 569, 197 S. E. 450.

The sole question, then, is what was the contract between the parties? Was the fee limited to one-fourth of the past due annuities collected, or did it include one-fourth of the

*Code 1919, section 3428.

additional amount collected in compromise settlement of future annuities?

The appellant's first contention is that after she had signed the contract with Mr. Howard, it was altered without her knowledge or consent by the addition of the words "whether by compromise or otherwise."

Mrs. Leech testified that shortly after the contract had been executed she exhibited it to several of her friends, who would corroborate her statement that it did not then include the words "whether by compromise or otherwise." Not only did she fail to produce any witness to confirm this statement, but on cross-examination she flatly refused to divulge the names of the persons to whom she referred. She contented herself merely with saying that one of them was dead, and that she did not desire to involve any of them in this controversy.

An expert witness testified on behalf of Mrs. Leech that, in his opinion, the words in question were written on a typewriter other than that on which the rest of the contract was written.

The further testimony of Mrs. Leech is that on December 20, 1933, she was at Floyd Court House, where Brown G. Howard and Brown G. Howard, Jr., the father and brother of Leo S. Howard, maintained law offices; that by chance she went into the offices of these attorneys, and Brown G. Howard asked to see the copy of her contract of employment with Leo S. Howard; that she happened to have this contract in her possession on that occasion and handed it to Mr. Howard; that the latter gave the contract to his son, Brown G. Howard, Jr., who, in her presence, inserted the paper in the typewriter and wrote some words thereon; and that the contract was handed back to her but she did not examine it then or until nearly eighteen months afterwards, when she found that there had been inserted the words "whether by compromise or otherwise."

In addition to the fact that this statement is almost incredible on its face, it is flatly and emphatically contradicted by both of the Howards in all particulars. They denied

that Mrs. Leech had been in their offices at or anywhere near the time stated by her.

Both Leo S. Howard and Brown G. Howard testified that the contract was written in duplicate, in their offices at East Radford, in the presence of Mrs. Leech and each of them; that after the contract had been typewritten, Brown G. Howard suggested the insertion of the words "whether by compromise or otherwise"; that after these words were inserted by the stenographer, both copies were signed by Leo S. Howard and given to Mrs. Leech; and that she took both copies with her, later returning to Leo S. Howard a copy signed by her and retaining the other copy. This testimony of the Howards is corroborated by that of the stenographer who typed both the contract and the insertion, and who was no longer in the employ of the Howards at the time of giving her deposition.

In addition to this direct testimony there are other circumstances in the record which conclusively disprove Mrs. Leech's contention that the contract was altered to her prejudice without her knowledge or consent, and that she thought that Mr. Howard's compensation was to be limited to one-fourth of the amount of the past due annuities collected by him.

As we have already seen, on June 26, 1934, Mrs. Leech wrote a letter to Brown G. Howard suggesting that the compromise settlement with Harman should have netted her $10,000, which would have reduced the attorney's compensation to $2,500. And, again, on August 22, 1934, she wrote Mr. Howard a letter in which she requested that the fee be reduced to $2,000. These letters show, we think, that Mrs. Leech knew that the written contract contemplated that Howard was to be paid more than $1,250, which she now claims was the agreed amount.

In testifying about the circumstances leading up to the execution of the contract with Harman on June 22, 1934, Mrs. Leech was questioned as to whether she did not at that time calculate what one-fourth of $12,500 would be, and then ask Mr. Howard to arrange a settlement whereby

she would get an even $10,000, or, in other words, to reduce his fee to $2,500. Her answer was, "I'll go home and think it over. I have most of these things written down."

When the parties met in Dublin on June 10, 1935, to close the transaction, Mrs. Leech refused to proceed on the ground that the fee claimed by Mr. Howard was excessive. But no claim was then made, nor had she suggested to anyone before this, that there had been any alteration in the contract.

Miss Woolwine, a school teacher of Blacksburg and a friend of Mrs. Leech, testified that the latter had told her repeatedly that she was to pay the Howards one-fourth of the $12,500 collected; that she was complimentary of the manner in which her interests had been protected, and made no claim that there had been any alteration in the contract. This testimony of Miss Woolwine is not contradicted.

Thus we see that Mrs. Leech by her conduct, letters, and admissions recognized that her contract with Mr. Howard contemplated that he should be paid one-fourth of the total amount collected by him.

Neither do we find in the record any justification for Mrs. Leech's claim that she was importuned by her attorneys, against her better judgment, to enter into the Harman-Spotts contract. The lower court correctly held, we think, that $12,500 in cash was a fair and adequate settlement for the accrued and future annuities payable to her, and that she had voluntarily entered into the contract.

On the whole we find no error in the decree appealed from and the same is

*Affirmed.*