## Richmond

**B. Franklin Griffin, Jr., and Alan E. J. Branigan, T/A Griffin and Branigan v. Norman B. Rainer.**

January 17, 1972.

Record No. 7709.

Present, Snead, C.J., Carrico, Gordon, Harrison, Cochran and Harman, JJ.

*Edward W. Taylor (Hundley, Taylor & Glass,* on brief), for plaintiffs in error.

*Donald R. Howren,* for defendant in error.

Cochran, J., delivered the opinion of the court.

Griffin and Branigan, a patent law firm, initiated this action by motion for judgment against Norman B. Rainer on nine negotiable notes in the aggregate principal sum of $9,300, with interest and at-

torney fees. Trial by jury resulted in a verdict for plaintiffs in the amount of $5,500. From the final order setting this verdict aside and entering judgment for Rainer, we granted Griffin and Branigan a writ of error.

Although the testimony of Branigan, for the plaintiffs, frequently was in direct conflict with that of Rainer, in our consideration of the action of the trial court, we will accept Branigan's version of the facts.

In July, 1967, Rainer employed Branigan to represent him in certain litigation then pending in which Philip Hunt Chemical Company was seeking to obtain from Rainer, and another individual defendant, as well as two corporate defendants, the assignment of various patents and applications, together with punitive damages of $75,000 for alleged fraud and conspiracy. According to Branigan, he made an oral fee agreement with Rainer under which the latter was to be billed each month at a rate of $30 per hour. Each month Rainer was to pay what he could and execute a note for any unpaid balance. It was also understood that if, at the conclusion of the litigation, there was not sufficient money arising from royalty income to pay this charge, the hourly rate of $30 would be reduced to $20.

At about the same time that the attorney-client relationship arose between Branigan and Rainer, the law firm entered into a written employment contract with the other defendants in the patent litigation, Charles Kapar (an uncle of Rainer's wife) and two corporations in whose names Kapar transacted business. Thereafter, evidence in the patent case was taken by depositions over an extended period of time, during which Rainer and Kapar became deliquent in their payments to Griffin and Branigan.

The law firm decided to merge the Rainer and Kapar accounts. A fee contract was prepared, dated December 20, 1967, which stated that as of that date Rainer was in arrears by more than $5,300 and Kapar was in arrears by more than $9,800. The contract provided that Rainer and Kapar would be jointly and severally liable for the amounts then owing by each to Griffin and Branigan. It further provided for prompt reimbursement for disbursements made by the firm, and monthly payment in full of fees, or, in lieu thereof, a nominal payment on account and execution of notes by Rainer and Kapar evidencing the unpaid balance due.

Branigan testified that the patent case against Rainer and his codefendants was set for trial in the United States District Court in

Alexandria beginning February 5, 1968, with 20 days allocated for the trial. On January 2, 1968, additional pre-trial depositions were being taken by Philip Hunt Chemical Company. Prior to this time Rainer and Kapar had not signed the fee contract, paid their arrearages or executed the notes provided for in the contract. At the noon recess in the taking of depositions, Branigan informed Rainer that he would withdraw from the case and would not return to the taking of depositions in the afternoon unless the notes were executed. Thereupon, Rainer signed the fee contract of December 20, 1967, a supplemental contract of the same date which undertook to clarify some of the terms of the fee contract, and nine notes which aggregated $9,300, although the combined arrearages of Rainer and Kapar were $15,100 as of the effective date of the contract.

The trial court instructed the jury that it could find for Griffin and Branigan on either of two theories: (1) That the notes were executed pursuant to the oral agreement of July, 1967; or (2) that, if they were not so executed, they were presumed to be invalid and Griffin and Branigan were entitled to recover only if they overcame the presumption by clear and convincing evidence that the execution of the notes was "fair, reasonable and free from undue influence on the part of Mr. Branigan." The jury was further instructed that, if it found for Griffin and Branigan, they were entitled to recover "whatever amount is shown by the evidence to be due on the notes . . . ."

As the trial court pointed out in its letter opinion of December 4, 1970, sustaining Rainer's motion to set aside the verdict, the evidence shows that the notes were not executed pursuant to the prior oral agreement. Under the oral agreement Rainer was obligated to pay only his own legal fees and costs. By the terms of the notes, however, Rainer assumed a joint and several obligation of $9,300, representing in part arrearages of Kapar, in lieu of Rainer's previously existing personal obligation of $5,300. So there was no evidence to support a finding based upon the oral agreement of July, 1967.

We also agree with the trial court that there could be no recovery by Griffin and Branigan under the second theory submitted to the jury. The principles applicable to attorney-client fee contracts are outlined in *Stiers* v. *Hall*, 170 Va. 569, 197 S.E. 450 (1938). Such contracts, if made either before the attorney-client relationship arises or after the legal services have been completed, are subject to the same rules of construction as other contracts. *See Leech* v. *Har-*

*man*, 171 Va. 35, 48, 197 S.E. 455, 460 (1938); Va. Code § 54-69 (1967). But a different rule applies to such contracts made after the attorney-client relationship has arisen and before it has ended, where there is a presumption that the contract is invalid and the attorney has the burden of proving that it is fair and reasonable, that it was entered into freely by the client and that the client was fully informed and understood the agreement. *Thomas* v. *Turner's Adm'r.*, 87 Va. 1, 13, 12 S.E. 149, 153 (1890). *See Curtis* v. *Fabianich*, 200 A.2d 382, 383 (D.C.C.A. 1964).

The evidence for Griffin and Branigan shows that the notes sued on were not freely executed by Rainer. Branigan and his associate counsel, Kindness, testified to the circumstances under which Rainer signed the notes in Branigan's office. They both stated that Branigan informed Rainer that he would not return to the taking of depositions unless the notes were executed. Indeed, Branigan candidly admitted that he would take the same position again if confronted with a similar situation. After Rainer had executed the notes, Branigan continued to represent him at the taking of depositions and thereafter until the litigation was settled prior to trial.

Under these circumstances Rainer had no freedom of choice to resist the pressure applied by Branigan in his threat to withdraw. *See* Annot., 13 A.L.R.3d 701, 743 (1967). Since the evidence showed duress as a matter of law we agree with the trial court that the jury could not have properly based a verdict for Griffin and Branigan on the theory that the notes had been freely executed.

■ Appellants have also assigned error to the trial court's refusal to grant proffered Instruction "A" and to grant their motion to amend their motion for judgment. We find no merit in this assignment.

The proffered instruction would have permitted the jury to return a verdict for Griffin and Branigan in the amount of the reasonable value of legal services rendered, even if the notes sued on were found to be invalid. As the action was solely on the notes, it would have been improper to give a *quantum meruit* instruction based on implied contract.

■ At the conclusion of the evidence, the plaintiffs moved to amend their motion for judgment to include a claim under the oral contract between Branigan and Rainer and "to include damages for the balance of the fee that is legally due". This motion was overruled. Under Rule 3:13 amendments to pleadings may only be made

with leave of court but leave to amend "shall be liberally granted in furtherance of the ends of justice". *See* Va. Code § 8-119 (1957).

We cannot say as a matter of law that the trial court abused its discretion in overruling the motion to amend after the taking of evidence had been completed and each side had rested. To have granted the motion at that time would have necessitated either a new trial or a reopening of the case for the taking of evidence on an issue not previously raised at the trial. We find no error in the ruling of the trial court on the motion.

*Affirmed.*